The STATE of Ohio, Appellee,

v.

STEPHENS, Appellant.

[Cite as *State v. Stephens* (1998), 126 Ohio App.3d 540.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970127.

Decided March 6, 1998.

542

*Joseph P. Deters,* Hamilton County Prosecuting Attorney, and *Phillip Cummings,* Assistant Prosecuting Attorney, for appellee.

*Bryan Perkins,* for appellant.

HILDEBRANDT, Presiding Judge.

## I. Introduction

Defendant-appellant William Stephens appeals from the judgment of the trial court entered upon a jury verdict finding him guilty of possessing drugs in violation of R.C. 2925.11(A). Defendant claims that his conviction was against the manifest weight of the evidence, that the trial court should have excluded a

laboratory analysis of the contents of a bag allegedly belonging to defendant, and that his right to a fair trial was violated when the state exercised a peremptory challenge that defendant alleges was racially based. Finding none of the assignments of error to have merit, we affirm the judgment of the trial court.

## II. Nature of the Case

On October 29, 1996, at approximately 3:00 a.m., three Cincinnati police officers were patrolling an area of a federal housing complex known as Lincoln Court. The officers were on mountain bikes and wore clothing with the word "POLICE" prominently displayed. One of the officers, Officer Kowalski, separated from the other two and circled around to the back of the area where the officers were patrolling to intercept anyone who might flee from the other officers.

The other two officers, Stevens and Rohs, entered a courtyard and observed two individuals standing together. Upon seeing the officers, one of the individuals quickly moved around the corner of the building and out of the officers' sight. Officer Stevens noted that the fleeing individual was wearing a black jacket and blue jeans. Officer Rohs could not remember at the time of trial what the individual was wearing. Neither officer could describe the person who remained in the courtyard when his companion left.

Officer Stevens radioed Officer Kowalski and described the person who had left the courtyard. Kowalski came up the street adjacent to the courtyard, where he observed defendant, in a black jacket and dark pants, emerging from the corner. Kowalski testified that he observed defendant with an item in his hand, and that defendant threw the object to the ground before reaching the sidewalk. Stevens and Rohs turned the corner and began riding toward defendant, who continued to walk along the sidewalk. Kowalski used a hand signal that Stevens and Rohs recognized as a direction to arrest the defendant. Kowalski's recollection of the gesture he used was different from that of Stevens and Rohs.

Stevens handcuffed defendant while Kowalski walked back to where he had seen defendant throw the object. He picked up a bag that appeared to contain crack cocaine. Rohs performed a field test that indicated that the substance was cocaine. Stevens informed defendant of his *Miranda* rights. Defendant denied that the bag containing cocaine belonged to him.

On the day the case was scheduled for trial, defendant's counsel sought a preliminary ruling on the admissibility of the state's laboratory analysis of the contents of the bag found by Kowalski, arguing that the report was inadmissible because counsel had not received a copy until the morning of trial. The trial court offered to continue the case so that counsel for defendant could have an independent analysis of the bag's contents, but defendant's counsel declined.

When the case progressed through the initial voir dire of prospective jurors, the panel consisted of eleven persons who were clearly Caucasian and one "light-skinned" individual whose race was unclear. Defendant in this case is African–American. Neither counsel for defendant nor counsel for the state challenged any juror for cause. The trial court then permitted the parties to exercise their peremptory challenges. The prosecuting attorney, going first, indicated that he was satisfied with the jury and did not wish to exercise his first peremptory challenge.

Defense counsel exercised his first peremptory challenge, and a new juror, who was Caucasian, was seated and questioned. The prosecuting attorney declined to use his second peremptory challenge. Defense counsel used another peremptory challenge, another new juror, also Caucasian, was questioned, and the prosecuting attorney then declined to exercise a third peremptory challenge. After defense counsel exercised his third peremptory challenge, the next member of the jury venire to be seated and questioned was African–American. After examining this potential juror, Mr. Cooler, the prosecuting attorney, and defense attorney passed for cause. However, the prosecuting attorney then exercised his last peremptory challenge to remove this juror from the panel.

The trial court immediately called counsel to the bench and instructed the prosecuting attorney to state the reasons for the peremptory challenge under the protocol of *Batson v. Kentucky*,[1] which precludes exclusion of a juror on account of the juror's race. The prosecuting attorney stated that he excluded Cooler because Cooler was unemployed and had not worked since 1993, when he had injured his back at work. The prosecuting attorney stated that he had a preference for persons who were currently employed. Second, the prosecutor indicated that Cooler had demonstrated a "slow affect" in responding to questions, leaving long pauses before answering a question. Next, the prosecutor claimed that the state did not want Cooler on the jury because he had previously worked in a high-crime, high-drug area. Finally, counsel stated that he "suspected" that Cooler was taking medication for his back condition.

Defense counsel pointed out that another juror, who was white, stated that she was unemployed, but that the prosecuting attorney had left her on the jury. Defense counsel further argued that the prosecutor was removing half of the African–American jurors from the panel.

The trial court, after listening to both attorneys, permitted the state to exclude Cooler from the jury. The transcript of the proceeding reflects that the court stated: "His peremptory—the record speaks under *Batson* to the reasons he's

---

1. *Batson v. Kentucky* (1986), 476 U.S. 79, 86, 89, 106 S.Ct. 1712, 1717, 1719, 90 L.Ed.2d 69, 80–81, 82–83.

given. I thank you [the prosecutor and defense counsel] for your assistance." After the jury had been impaneled and sworn, defense counsel indicated that he wanted to place information on the record regarding the *Batson* issue. Defense counsel stated that the reasons provided by the prosecutor for excluding Cooler were not race-neutral and were otherwise not legitimate reasons for removing him from the jury. Counsel requested that the court declare a mistrial, but the court denied the motion.

The trial proceeded with all three investigating officers testifying to the events that led to defendant's arrest. A laboratory analyst, Julie Bowling, also testified that she had performed chemical tests on the contents of the bag found by Kowalski and that the bag contained crack cocaine. Consistent with the court's preliminary ruling, the laboratory report was also admitted into evidence.

To counter the state's case, several witnesses testified for defendant. A neighbor of defendant's testified that she called defendant around 3:00 a.m. to ask him to baby-sit for her children while she went out to get medicine for her sick infant. A friend of defendant's, Antwain Smith, testified that he had been with defendant on the night and morning of the arrest. Smith stated that he and defendant had rented movies that evening and watched them at defendant's residence until early morning. He further stated that, after receiving a phone call, defendant informed him that he had to go to his cousin's house. Defendant asked Smith to go with him, and Smith did. According to Smith, he and defendant were walking on the sidewalk when the police officers stopped them. Smith and defendant identified themselves to the police, and the police subsequently placed defendant under arrest. Smith was not arrested. He testified that at no time did defendant run out of the courtyard or throw anything.

Tasha Drummond, a resident of the housing complex, testified that she was awakened at approximately 3:00 a.m. by two people arguing. She looked out her window, but the arguing had stopped. She continued to look out the window and eventually saw defendant and another person walking up the sidewalk. Drummond stated that neither person was running and that she did not see defendant toss anything. She corroborated Smith's testimony regarding the arrival of the police and defendant's arrest.

The jury returned a verdict of guilty, and the court entered judgment upon the verdict, sentencing defendant to incarceration for eight years.

### III. Analysis

#### A. The Prosecutor's Exercise of a Peremptory Challenge Did Not Violate Defendant's Constitutional Right to Equal Protection

In his first assignment of error, defendant contends that the trial court erred by permitting the prosecuting attorney to use a peremptory challenge to exclude

a prospective African–American juror. Defendant claims that the prosecutor excused the juror, Cooler, because he was an African–American and that the other reasons given were a pretext for that discrimination.

 A criminal defendant has the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria, and the state's peremptory challenge privilege is subject to this equal protection analysis.[2] Generally, the party attacking the use of a peremptory challenge has the burden of establishing a prima facie case of discrimination.[3] In this case, the trial court did not require defendant to establish a prima facie case of discriminatory use of the peremptory challenge. The court *sua sponte* raised the *Batson* issue and requested that the prosecuting attorney provide his reasons for using the peremptory strike.

On appeal, the state argues that defendant cannot establish a prima facie case of discrimination because the state took no action to remove Leon Newsom, allegedly an African–American, from the jury. First, the record is not clear as to Newsom's race. The prosecutor insisted that he was African–American, the defendant insisted he was not, and the trial court indicated that the juror was "light skinned" and that the court had no conclusive information one way or the other.

 Moreover, the fact that the state did not exclude *all* members of a particular racial group does not prevent a defendant from establishing a prima facie case of discrimination. A prima facie case may be made by showing that members of a recognizable racial group were excluded from the jury and that other facts and circumstances raise an inference that the prosecutor used a peremptory challenge to exclude potential jurors on account of their race.[4]

 The prosecutor here exercised a peremptory challenge to exclude a member of defendant's race, and peremptory challenges "constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' "[5] The record also shows that the prosecutor had waived his three previous peremptory challenges before Cooler became a prospective juror. Although other jurors already seated were not currently employed (some due to

---

2. *Batson, supra.*

3. *Batson, supra,* 476 U.S. at 93–94, 106 S.Ct. at 1721, 90 L.Ed.2d at 85–86.

4. *Batson, supra,* 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88; *State v. Hernandez* (1992), 63 Ohio St.3d 577, 582, 589 N.E.2d 1310, 1313.

5. *Batson* at 96, 106 S.Ct at 1723, 90 L.Ed.2d at 87–88, quoting *Avery v. Georgia* (1953), 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244, 1247–1248.

retirement), the prosecutor identified Cooler's lack of employment as the first reason for the peremptory challenge.

Although the trial court did not specifically state that defendant had made out a prima facie case of discrimination, the facts recited above provide sufficient support for such a determination and, in any event, justify the decision requiring the state to identify the reasons for its peremptory challenge of Cooler. As indicated earlier, the trial court held that the reasons advanced by the state for the challenge satisfied *Batson's* equal-protection analysis. The court's finding that the state had no discriminatory intent in excluding the juror will not be reversed unless it is clearly erroneous.[6]

 After a party establishes a prima facie case of discrimination, the prosecutor must articulate a race-neutral reason for exercising the peremptory challenge.[7] In *Hernandez v. New York,* the Supreme Court explained:

"In evaluating the race neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law."[8]

 If the prosecutor articulates an explanation for the challenge that is, on its face, nondiscriminatory, the reason offered is considered race-neutral. A "legitimate reason" for a peremptory challenge "is not a reason that makes sense, but a reason that does not deny equal protection."[9] The Supreme Court in *Purkett* rejected the argument that the state, in meeting its burden, had to show that its reason for striking a juror was racially neutral *and* plausible or persuasive. The ultimate burden of persuasion is on the defendant to prove purposeful discrimination.

 Here, the prosecutor offered facially neutral reasons for exercising the peremptory challenge: Cooler was unemployed, he had been employed in neighborhoods with a high incidence of drug trafficking and use, his responses were slow, and he had a back problem and might be on medication. The trial court then had the responsibility to determine whether the evidence proved purposeful discrimination. See *State v. Hernandez; Purkett.*

---

6. *Hernandez,* 63 Ohio St.3d at 583, 589 N.E.2d at 1314.

7. *Hernandez v. New York* (1991), 500 U.S. 352, 359–360, 111 S.Ct. 1859, 1865–1866, 114 L.Ed.2d 395, 405–406; *State v. Hernandez, supra,* at 582–583, 589 N.E.2d at 1313–1314.

8. *Hernandez v. New York, supra,* at 359, 111 S.Ct. at 1866, 114 L.Ed.2d at 405–406.

9. *Purkett v. Elem* (1995), 514 U.S. 765, 769, 115 S.Ct. 1769, 1771–1772, 131 L.Ed.2d 834, 839–840.

Although the trial court did not provide much insight into its thought process, the record shows that he was cognizant of a potential *Batson* problem, considered the race-neutral explanations offered by the state, and permitted defendant's counsel to demonstrate purposeful discrimination. The court held that the prosecutor had satisfied *Batson's* equal-protection requirements. The court therefore indicated that it was satisfied that the peremptory challenge was not exercised with a discriminatory intent but for some other race-neutral reason.

After reviewing the record, we hold that the trial court's decision that the prosecutor had no discriminatory intent was not clearly erroneous. The record supports the reasons given by the prosecutor, with the exception of the prosecutor's suspicion that Cooler was taking medication. We are in no position, on appeal, to judge whether Cooler demonstrated a "slow affect" or whether he hesitated in responding to the prosecutor's questions. The trial court was in the best position to judge Cooler's demeanor and make that determination. Without agreeing or disagreeing with the prosecutor's apparent belief that a juror who had worked in an area known for drug use and trafficking would be hostile to his case, we note that the reason was related to the subject matter of the case, which involved drug possession.

The prosecutor also proffered explanations that were suspect, such as his assumption that Cooler was on medication, and his alleged preference for jurors who were currently employed, even though other members of the jury were retired and one was receiving some public assistance and not currently working. However, the trial court weighed the various explanations given by the prosecutor and found them credible, and we do not find that the court's conclusions were clearly erroneous.

Based on the foregoing, we overrule defendant's first assignment of error.

### B. Defendant's Conviction Was Not Against the Manifest Weight of the Evidence

Defendant claims in his second assignment of error that his conviction was against the manifest weight of the evidence. Defendant argues that the officers' testimony was inconsistent and that Kowalski's testimony was not credible.

To reverse on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[10] Generally, the weight to be given the evidence and the

---

**10.** *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546; *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720.

credibility of the witnesses are matters within the province of the factfinder. *State v. DeHass.*[11]

After reviewing the entire record, we hold that the jury did not lose its way in assessing the evidence, judging credibility, and resolving conflicts. Officer Kowalski testified that he personally observed defendant toss a small bag onto the lawn area away from the sidewalk. Kowalski stated that defendant, although moving in Kowalski's direction, was looking over his shoulder at the time and did not see Kowalski until after he had tossed the bag onto the lawn. Officers Stevens and Rohs testified that they observed defendant quickly move out of the courtyard and in Kowalski's direction when defendant saw them and that they radioed that information to Kowalski.

All three officers testified that Kowalski signaled or gestured to Stevens and Rohs to instruct them to arrest defendant. Kowalski's recollection of the signal used was different from Stevens' and Rohs', but the jury was entitled to give the inconsistency whatever weight it chose. Reviewing the record, we assign little weight to the slight differences in the officers' testimony.

Kowalski testified that when he saw that defendant had been arrested by his colleagues, he walked over to the place where he saw the bag land after defendant tossed it onto the lawn. He picked up the bag, and Rohs performed a field test that indicated that the substance was most likely cocaine. Defendant claims that Kowalski's testimony was simply not believable. The jury apparently found that Kowalski was a credible witness, and our review of the record does not lead us to a contrary conclusion. It is entirely plausible that defendant had his head turned towards the courtyard, where he had seen Stevens and Rohs, when he moved around the corner of the building in Kowalski's direction and then tossed the bag.

Defendant's conviction is not against the manifest weight of the evidence. Defendant's second assignment of error is overruled.

### C. The Trial Court Did Not Err to Defendant's Prejudice by Overruling Defendant's Motion to Exclude the Laboratory Report

Finally, defendant contends that the trial court erred when it permitted the state to introduce into evidence the written report containing the results of the laboratory analysis of the contents of the bag that Kowalski recovered after defendant was arrested. The results of the laboratory analysis confirmed the field test that had been performed: the bag contained crack cocaine.

---

11. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

Defendant first claimed below that he had not been provided a copy of the report until the morning of trial, and that he therefore had not had an opportunity to obtain an independent review of the evidence. Based on that assertion, the trial court offered a continuance of the trial so that defendant could review the report and have an independent examination of the bag's contents performed. After discussion between defendant and his counsel, counsel indicated that he did not want a continuance and was ready to proceed. Later, when the prosecutor offered the report into evidence, defendant's counsel objected, this time on the ground that the report was cumulative of the testimony of the laboratory analyst. The court overruled the objection and admitted the report into evidence.

R.C. 2925.51 provides that, in cases involving drug offenses or controlled substances, a police laboratory report may be considered prima facie evidence of the weight, content, and identity of the substance at issue, if the report meets certain specified requirements. One of those requirements is that the prosecutor serve the defendant's attorney with a copy of the laboratory report prior to any proceeding in which the prosecutor seeks to use the report. Failure of the prosecutor to serve defendant's attorney with a copy of the report prior to trial renders the report inadmissible at trial.[12]

In this case, the record shows that defendant's attorney was not served with a copy of the laboratory report until the morning of the trial and that the trial court admitted the report into evidence. If providing the report on the morning of trial does not fulfill the requirement of serving the report "prior to [the] proceeding in which the report is to be used," R.C. 2925.51(B), a question we do not decide here, the trial court should have held that the report was inadmissible. We hold, however, that no prejudice resulted from admission of the written report.

First, defendant's complaint that he was unable to obtain an independent analysis of the contents of the bag is irrelevant to the issue of the admissibility of the laboratory report or to prejudice allegedly arising from an untimely delivery of the report. R.C. 2925.51(E) provides a defendant with the right to have a portion of the evidence preserved so that he may have an independent analysis of the alleged contraband performed. The prosecutor is required to make the preserved portion available to the defendant at least fourteen days before the trial *upon the request of the defendant.*

There is no evidence in this case of a request for preservation of the evidence so that an independent analysis could be performed. Defendant's right to have

---

12. See *State v. Reese* (1978), 56 Ohio App.2d 278, 280–282, 10 O.O.3d 285, 286–288, 382 N.E.2d 1193, 1195.

the material analyzed was not prejudiced by (and, in fact, not affected by) service of the report on the day of trial or the admission of the report into evidence. On the state of this record, the only discernible impediment to independent analysis of the cocaine was the defendant's own failure to request preservation of the substance.

Moreover, in construing the provisions of R.C. 2925.51, this court and others have clarified that failure to provide a copy of the report renders the report inadmissible, but it does not prevent live testimony from the person who performed the analysis to prove the content, weight, and identity of the substance at issue.[13] In this case, Julie Bowling testified at the trial regarding the tests she performed and the results of those tests concerning the content, weight, and identity of the substance. In fact, defendant's counsel objected to admission of the written laboratory report at the close of the state's case because it was cumulative of Bowling's testimony. There was no objection to, and no error in admitting, Bowling's testimony.

Based on the facts of this case, we hold that admission of the laboratory report was not prejudicial error, and we overrule defendant's third assignment of error.

## IV. Conclusion

Based on the foregoing, we overrule defendant's assignments of error and affirm the judgment of the court of common pleas.

*Judgment affirmed.*

SHANNON, J., concurs.

PAINTER, J., concurs in part and dissents in part.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

PAINTER, Judge, concurring in part and dissenting in part.

The prosecutor was satisfied with a jury that included three individuals who were not currently employed—two were retired and one received public assistance. But when a defense challenge to another juror put in the box a prospective African–American juror who was unable to work because of an injury,

---

**13.** See, *e.g., State v. Denney* (Oct. 22, 1980), Hamilton App. No. C–790765, unreported; *State v. Kendrick* (June 8, 1983), Hamilton App. Nos. C–820531 and C–820537, unreported, 1983 WL 8888; *State v. Fluker* (Feb. 25, 1982), Cuyahoga App. No. 43782, unreported, 1982 WL

the prosecutor used a peremptory challenge because he preferred people who were currently employed. The other reason was that, when the prospective juror had been employed, it was in a "high crime" area. The issue of possible medication is not supported by the record. If these reasons are sufficient to negate a *Batson* problem, then *Batson* is meaningless. See *State v. Burks* (June 30, 1997), Franklin App. No. 96APA09–1258, unreported, 1997 WL 360844; *State v. Singfield* (Jan. 26, 1994), Summit App. No. 16253, unreported, 1994 WL 30482.

I dissent in the first assignment of error. I concur in the balance of the decision.

2365; *State v. Nemeckay* (Dec. 20, 1990), Cuyahoga App. No. 57235, unreported, 1990 WL 210233.