DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Cedric Lynch, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On August 21, 2002, Appellant was indicted on numerous counts related to suspected drug activity. Appellant's indictment followed a lengthy investigation by the Narcotics Bureau of the Elyria Police Department. At trial, the State called numerous witnesses, including several different detectives and an analyst from the Bureau of Criminal Investigation and Identification ("BCI"). Numerous recorded phone calls were played, and the State introduced a substantial amount of physical evidence.
 {¶ 3} The State's first witness, Detective James Widmer of the Elyria Police Department, testified as follows. He works in the narcotics division and the prosecution of Appellant stemmed from an investigation which focused on Henry Smith, Appellant's cousin. In the early phases of the investigation, a pen register was placed on Mr. Smith's phone in order to track the numbers that he was calling. In turn, the numbers were matched to the owners of the other phones. In addition, a Global Positioning System was placed on Mr. Smith's vehicle to aid in the investigation by tracking his movements. As a result, police were able to maintain surveillance on Mr. Smith at all times. During the course of these phone calls, Mr. Smith on occasion called Appellant. Detective Widmer testified that from his experience and training, the two sometimes used drug slang during their conversations.
 {¶ 4} Additionally, the State presented the testimony of Detective Terry Kenneally and Detective James Welsh. Detective Kenneally testified that he observed Appellant stop at a stop light, get out of his vehicle, and take a black bag from the car of John Johnson, a man known to be involved in Mr. Smith's drug business. Next, Detective James Welsh testified that Appellant confessed that the drugs and drug paraphernalia found at his mother's house belonged to him. Appellant also told Detective Welsh that he received approximately an ounce of cocaine from Mr. Smith each month and that Appellant had known for several years that Mr. Smith was a drug dealer. In addition, Detective Welsh testified that tally sheets were recovered that belonged to Appellant and that they indicated debts totaling over $20,000 from numerous individuals.
 {¶ 5} Additionally, over defense objection, the State solicited the testimony of R. Michael Velten, a lab director for BCI. Mr. Velten testified that the substances found at the residence of Appellant's mother were controlled substances, including marijuana and cocaine. He went on to testify as to the amount of each substance that was recovered from the residence.
 {¶ 6} In turn, Appellant put on witnesses which contradicted the surveillance reports given by the detectives. Two of these witnesses testified that Appellant could not have been where police surveillance placed him on June 18, 2002, because he was with them at a basketball game. Another defense witness, an auto mechanic, testified that Appellant's vehicle could not have been at Red Lobster on June 15, 2002, as the police testified, because he was working on Appellant's vehicle that day. Finally, Appellant testified on his own behalf. He reiterated that he was not involved in any of Mr. Smith's drug activities. Further, he recanted his confession, stating that he lied in order to get his mother and brother out of jail. He went on to explain that the tally sheets all referenced personal debts for monies he had loaned to family and friends.
 {¶ 7} At the trial's conclusion, Appellant was found guilty of one count of possession of cocaine, one count of possession of criminal tools, and one count of engaging in a pattern of corrupt activity. As a result, he was sentenced to seven years incarceration. Appellant timely appealed his conviction, raising three assignments of error for our review.
 II. ASSIGNMENT OF ERROR I
"Appellant's conviction for engaging in a pattern of corrupt activity under count eleven of the indictment was against the manifest weight of the evidence [.]"
 {¶ 8} In his first assignment of error, Appellant alleges that his conviction for engaging in a pattern of corrupt activity was against the manifest weight of the evidence. We disagree.
 {¶ 9} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 10} In his assignment of error, Appellant challenges only his conviction for engaging in a pattern of corrupt activity. R.C.2923.32(A)(1) provides as follows:
"No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."
In support of his claim that the evidence at trial weighed heavily in his favor, Appellant asserts that he is a victim of circumstance. He readily admits to meeting on several occasions with a known drug dealer, but explains that the drug dealer, Henry Smith, is his cousin and they were planning a trip.
 {¶ 11} Appellant's assertions lack merit. At trial, the State produced witnesses who testified about the drug operation run by Henry Smith. The officers who testified noted that Appellant's meetings with Mr. Smith coincided with events related to Mr. Smith's operation. That is, the officers testified that Appellant's meetings often fell on dates when Mr. Smith's operation was known to be collecting money from drug purchasers.
 {¶ 12} Additionally, Appellant confessed, on tape, that the drugs and drug paraphernalia seized from his mother's house belonged to him. He also testified at trial that the tally sheets and cash at the house also belonged to him. At trial, he recanted his confession on the stand and attempted to explain the tally sheets and the nearly $14,000 in cash that was found in a shoebox in his mother's basement. The trial court, however, was left with his taped confession and numerous recorded phone calls between Appellant and Henry Smith. While Appellant denied trafficking in drugs, his confession also included that he purchased drugs from Henry Smith on a monthly basis for a prolonged period of time. Given the extensive testimony given by the officers regarding their observations of Appellant and Henry Smith, Appellant's confession, and the evidence recovered from Appellant's home, we cannot say that the trial court lost its way in finding Appellant guilty of engaging in a pattern of corrupt activity. Accordingly, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"The trial court erred in denying the appellant's motion to suppress evidence[.]"
 {¶ 13} In his second assignment of error, Appellant argues that the trial court erred in failing to suppress drug evidence seized from his mother's residence. We find that Appellant's second assignment of error lacks merit.
 {¶ 14} In making its ruling on a motion to suppress, the trial court makes both legal and factual findings. State v. Jones, 9th Dist. No. 20810, 2002-Ohio-1109, at ¶ 9. It follows that this Court's review of a denial of a motion to suppress involves both questions of law and fact.State v. Long (1998), 127 Ohio App.3d 328, 332. As such, this Court will accept the factual findings of the trial court if they are supported by some competent and credible evidence. State v. Searls (1997),118 Ohio App.3d 739, 741. However, the application of the law to those facts will be reviewed de novo. Id.
 {¶ 15} For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant, unless an exception to the warrant requirement applies. Katzv. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576;State v. Brown (1992), 63 Ohio St.3d 349, 350. Probable cause has been defined as "a reasonable ground for belief of guilt." State v. Moore
(2000), 90 Ohio St.3d 47, 49, certiorari denied (2001), 532 U.S. 908. (Quotations and citations omitted). Probable cause "must be based upon objective facts that would justify the issuance of a warrant by a magistrate." Id., citing State v. Welch (1985), 18 Ohio St.3d 88, 92.
 {¶ 16} At Appellant's suppression hearing, the State presented testimony from Sergeant Bryan Rado and Detective Kenneally. Officer Rado testified that Appellant had been under extensive surveillance. This surveillance revealed that he spent a substantial period of time at 1123 Morgan Avenue, the home which was searched. He further testified that Appellant was observed in the company of numerous suspected drug offenders and was seen exchanging a package with one of them. Finally, he informed the court of at least 13 different phone calls between Appellant and Henry Smith, a known drug dealer, and testified that several dealt with John Johnson being in town to collect money for drugs. Detective Kenneally testified that he observed Appellant exit his vehicle while at a red light and retrieve a bag from the car behind him, which was driven by a suspected drug offender. Based upon the testimony of these officers, "a reasonable ground for belief of guilt" existed to justify the issuance of a warrant. Moore, 90 Ohio St.3d at 49. As such, Appellant's motion to suppress was properly denied. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III
"The trial court erred in denying appellant's motion in limine with respect to the admission of any substance purported to be cocaine in this matter and deprived appellant of due process of law because the state of ohio failed to properly file and produce a laboratory report for review by [appellant] within a reasonable time prior to trial."
 {¶ 17} In his final assignment of error, Appellant alleges that the trial court erred in permitting the introduction of laboratory reports regarding the drugs found at his mother's residence and in permitting State witnesses to testify about those reports. We find that any error by the trial court was harmless beyond a reasonable doubt.
 {¶ 18} R.C. 2925.51(A) provides that, in trials regarding drug offenses, a lab report which analyzes and determines whether a substance is in fact a controlled substance will constitute prima facie evidence of the content, weight, and identity of the substance if certain requirements are met. One of those requirements is that the State serve the defendant with a copy of the lab report prior to trial. R.C.2925.51(B). Failure to serve the defendant with a copy of the report renders the report inadmissible at trial. State v. Stephens (1998),126 Ohio App.3d 540, 551. However, any error in the admission of the lab report in this matter was harmless.
 {¶ 19} Our sister courts which have been faced with this issue have each found that the failure to provide the lab report before trial does not prevent live testimony from the individual who performed the analysis. Id. at 552. See also, State v. Denney (Oct. 22, 1980), 1st Dist. No. C-790765; State v. Fluker (Feb. 25, 1982), 8th Dist. No. 43782; State v. Nemeckay (Dec. 20, 1990), 8th Dist. No. 57235. We reach the same conclusion.
 {¶ 20} R.C. 2925.51 provides that the lab report will be considered prima facie evidence of the content, weight, and identity of the substance analyzed. It does not speak to live testimony in any manner, nor exclude any other method of proving the identity of the substance. Further, while the failure to receive the lab report in a timely manner may have inhibited the effectiveness of Appellant's cross-examination, the legislature has provided that Appellant may independently test any substance tested by BCI. R.C. 2925.51(E). In the instant matter, Appellant did not request an independent test of the substances seized from his mother's residence. Additionally, Appellant's counsel had the opportunity to cross-examine Mr. Velten during trial regarding the validity of the lab results. As Mr. Velten testified that the analysis of the substance led to a finding that they were controlled substances and testified to the quantities of those drugs, any error by the trial court in admitting the underlying reports was harmless. Stephens,126 Ohio App.3d at 552. Accordingly, Appellant's third assignment of error is overruled.
 III. {¶ 21} Appellant's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Carr, J., Concur.