DECISION.
{¶ 1} Qawi Payne appeals his convictions for two counts of felonious assault with specifications, having a weapon while under a disability, and carrying a concealed weapon. We conclude that his five assignments of error do not have merit, and we therefore affirm the judgment of the trial court.
 Background {¶ 2} In October 2005, three plainclothes police officers were patrolling the Over-the-Rhine area of Cincinnati. The officers heard a gunshot and drove toward the sound. Payne was running from the area. When Officer Matthew Hammer told Payne to stop, Payne continued to run and, while running, threw a gun over his head into a vacant lot. Officer James Lewis eventually stopped Payne. According to Hammer, Payne said, "He had a gun, too. They're shooting over there."
 {¶ 3} Officer Ryan Robertson responded to the area where the gunshot had been heard. He found Edward Mumphrey lying on the street with a gunshot wound to the abdomen.
 {¶ 4} At trial, Payne testified that he knew Mumphrey, and that, prior to the day of the shooting, Mumphrey had given him some marijuana to sell. According to Payne, while he was walking down the street on the day of the shooting, Mumphrey pulled up next to him in a car and demanded that Payne give him money for the marijuana. When Payne told him that he did not have the money, Mumphrey pointed a gun at him. Payne testified that he had reached into the car for the gun, and that, during the ensuing struggle, the gun had gone off. According to Payne, he ran from the scene with the gun to prevent Mumphrey from shooting him. Payne *Page 3 
also testified that he had thrown the gun while the police officers were chasing him because he had not wanted the officers to shoot him.
 {¶ 5} At the conclusion of the trial, the jury found Payne guilty as charged. The trial court sentenced him to eight years for one of the felonious assaults with a consecutive three-year term for the specification, five years for the remaining felonious assault, five years for having a weapon under a disability, and 18 months for carrying a concealed weapon. The terms were all to run consecutively for a total of 22½ years.
 {¶ 6} In his first assignment of error, Payne asserts that his convictions were based on insufficient evidence and were against the manifest weight of the evidence. A sufficiency argument challenges whether the state presented adequate evidence on each element of the offense.[1] On the other hand, when reviewing whether a judgment is against the manifest weight of the evidence, we must determine whether the jury clearly lost its way and created a manifest miscarriage of justice.[2]
 {¶ 7} In his appellate brief, Payne challenges only the sufficiency and weight of the evidence to support the felonious-assault convictions. He argues that the state presented no evidence that he had acted knowingly, and that, therefore, the state had failed to present sufficient evidence of an element of both felonious assaults. He contends that because only he, and not the victim, testified, the only evidence was that he had grabbed Mumphrey's gun in self-defense and that he had shot Mumphrey accidently. But we conclude that the state presented circumstantial evidence that was sufficient to demonstrate that Payne had acted knowingly. The police officers' testimony and the physical evidence contradicted Payne's account. It *Page 4 
was for the jury to determine the credibility of the testimony. Accordingly, we conclude that the evidence was sufficient, and that the jury did not lose its way when it found Payne guilty of both felonious assaults. The first assignment of error is overruled.
 {¶ 8} Payne's second assignment of error is that the trial court erred when it refused to give Payne's requested jury instruction on self-defense as it related to the weapon-under-a-disability offense. "A trial court must give the defendant's requested instructions to the jury if they are correct, pertinent statements of law and are appropriate under the facts of the case."[3] We review a trial court's decision on whether to include a requested jury instruction under an abuse-of-discretion standard.[4]
 {¶ 9} To establish that he had acted in self-defense, Payne had to show that he had not been at fault in creating the situation, that he had had a bona fide belief that he was in imminent danger, and that he had not violated a duty to retreat. Payne did not assert self-defense in relation to the felonious assaults. Instead, he argued that he had acted in self-defense after the shooting, when he had run away with the gun. According to Payne, he feared that Mumphrey would shoot him if he had the gun.
 {¶ 10} We conclude that the trial court did not err when it refused to give the requested self-defense instruction. Even if Payne's account were believed, it was not reasonable for him to believe that he was in imminent danger. Payne urges us to follow the decision of the Eighth Appellate District in State v. Hardy.[5] In that case, *Page 5 
the defendant, while under a disability, grabbed a gun from an employee who was trying to take money from the store where the defendant was working. The court held that although the defendant technically came within the meaning of "have" when he shot the victim, he was entitled to assert self-defense.[6] But Hardy's facts are inapposite to those in the case before us. There the court was considering the defendant's assertion of self-defense at the instant that he was holding and firing the gun. Payne did not assert self-defense in regard to the felonious assaults. Instead, he would have this court extend the reasoning inHardy to the period of time after the victim had been shot. We conclude that self-defense did not apply in this situation because Payne did not present sufficient evidence that he was in imminent danger after he had shot Mumphrey. The trial court's decision not to instruct the jury on self-defense in relation to the weapon-under-a-disability offense was not an abuse of discretion.
 {¶ 11} Payne's third assignment of error is that the trial court erred when it convicted him of two allied offenses of similar import. Payne urges us to conclude that the felonious assaults were allied offenses of similar import, despite the Ohio Supreme Court's holding in State v.Rance.[7] But we remain bound by the supreme court's decision, and we reaffirm our holding in State v. Coach,[8] in which we concluded that felonious assault in violation of R.C. 2903.11(A)(1) and felonious assault in violation of R.C. 2903.11(A)(2) are not allied offenses. The third assignment of error is overruled. *Page 6 
 {¶ 12} In his fourth assignment of error, Payne asserts that the trial court erred when it made comments and questioned witnesses during the trial. Payne points to several instances in which the trial court interjected itself into the proceeding to ask follow-up or clarification questions of the witnesses. The trial court is permitted to interrogate witnesses in an impartial manner during trial.[9] Further, Evid.R. 614(C) provides that a party may object to the court's interrogation of witnesses at the time of the interrogation or at the next time the jury is not present. A trial court's interrogation of witnesses and comments are subject to review under an abuse-of-discretion standard.[10]
 {¶ 13} In this case, Payne's defense counsel did not object to any of the court's questions or comments. So we must determine whether the trial court's interrogation and comments amounted to plain error. Plain error exists only if, but for the error, the outcome of the trial would have clearly been different.[11]
 {¶ 14} Most of the questioning done by the trial court either clarified or expanded upon the actions the police officers had taken when pursuing Payne, the type of gun that Payne had thrown into the vacant lot, and the injuries suffered by Mumphrey. At trial, Payne did not dispute that he had run from the officers, that he had thrown a gun, or that he had wounded Mumphrey. We conclude that the outcome of the trial would not have been different had the court not asked these questions.
 {¶ 15} More troubling, however, were the trial court's comments while Payne was testifying. According to Payne, Mumphrey had given him marijuana while *Page 7 
Payne was on the way to the hospital for the birth of his baby. While Payne was testifying, the trial court asked, "Is that like a shower present for having a baby?" Payne responded, "I don't know." The court continued, "It was at the hospital when the baby was being delivered; is that what you're saying?"
 {¶ 16} The state concedes that the trial court's comment about when Payne had gotten the marijuana was not prudent. We agree. The trial court's statement clearly did not serve to clarify Payne's statement. But given the overwhelming evidence of Payne's guilt, we conclude that the statement, albeit imprudent, did not rise to plain error. The fourth assignment of error is overruled.
 {¶ 17} Payne's final assignment of error is that he was deprived of the effective assistance of counsel. To prevail on his claim that his counsel was ineffective, Payne must demonstrate that his counsel's performance was deficient and that, absent his counsel's errors, the result of the trial would have been different.[12] Our review of counsel's performance must be "highly deferential."[13]
 {¶ 18} Payne asserts that his counsel was ineffective because she did not object to the trial court's interrogation of witnesses and comments. As we have already discussed, many of the trial court's questions clarified and expanded upon issues that Payne did not challenge. It may have been counsel's strategy not to object to testimony that was not damaging to her client's case. We will not second-guess that strategy here. The trial court's "baby shower" comment was objectionable. But given the overwhelming evidence of Payne's guilt, we are unable to conclude that, *Page 7 
had counsel objected, the outcome of the trial would have been different. The fifth assignment of error is not well taken.
 {¶ 19} We, therefore, affirm the judgment of the trial court.
Judgment affirmed.
HlLDEBRANDT, J., concurs.
PAINTER, P.J., dissents in part.
[1] See State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
[2] See id. at 387.
[3] State v. Brewster, 1st Dist. Nos. C-030024 and C-030025,2004-Ohio-2993, at ¶ 58.
[4] State v. Wolons (1989), 44 Ohio St.3d 64, 541 N.E.2d 443.
[5] (1978), 60 Ohio App.2d 325, 397 N.E.2d 773.
[6] Id. at 328-329.
[7] 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699.
[8] (May 5, 2000), 1st Dist. No. C-990349.
[9] Evid.R. 614(B).
[10] State v. Davis (1992), 79 Ohio App.3d 450, 454,607 N.E.2d 543.
[11] State v. Moreland (1990), 50 Ohio St.3d 58, 62,552 N.E.2d 894.
[12] See State v. Bradley (1989), 42 Ohio St.3d 136, 142,538 N.E.2d 373; Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052.
[13] Strickland, supra, at 689.