The STATE of Ohio, Appellee,

v.

PERSON, Appellant.

[Cite as *State v. Person,* 174 Ohio App.3d 287, 2007-Ohio-6869.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060656.

Decided Dec. 21, 2007.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Ronald W. Springman Jr., Assistant Prosecuting Attorney, for appellee.

Gloria L. Smith, for appellant.

DINKELACKER, Judge.

{¶ 1} Defendant-appellant, Dante Person, was convicted of two counts of felonious assault with firearm specifications,[1] carrying a concealed weapon,[2] and having a weapon while under a disability.[3] Having considered Person's seven assignments of error, we affirm.

### "Officer Down"

{¶ 2} Cincinnati Police Officers Kristina Holtmann and Laureen Smith were on routine patrol in the early morning hours of January 11, 2006. The officers passed a vehicle with windows that appeared to be too darkly tinted. Additionally, the rear license plate was not illuminated. The officers activated their overhead lights and made a U-turn. The vehicle stopped and backed into a driveway before the police unit reached it. Officer Smith approached the driver's side and Officer Holtmann approached the passenger side. The driver of the car, Bryan Caulton, had an outstanding warrant. Officer Smith arrested Caulton and placed him in the back seat of the police car.

{¶ 3} While Officer Smith was dealing with Caulton, Officer Holtmann asked Person, who was in the front passenger seat, for identification. He did not have identification, but gave Officer Holtmann his name and date of birth. Based on previous encounters with Person, Officer Holtmann believed that he had given a false last name and asked him to get out of the car. After he emerged, Officer Holtmann ordered him to place his hands behind his back. Person turned, produced a handgun, and shot Officer Holtmann in the face.

{¶ 4} Person immediately fled. As he was running, Officer Holtmann saw him turn and point his gun at her. At this point, she and Officer Smith returned fire. One of the shots struck Person in the leg, but he was able to continue fleeing.

{¶ 5} As officers were establishing the crime scene, a witness came forward and told police that Person was in the basement of a nearby residence. A perimeter was established around the home until a S.W.A.T. unit could arrive. Police then began a systematic search of the house, discovering Person in the basement. After Person was taken into custody, he was asked what he had done with the handgun. He told an officer to "go fuck [himself]."

---

1. R.C. 2903.11(A)(1) and (A)(2).

2. R.C. 2923.12(A).

3. R.C. 2923.13(A).

{¶ 6} Person was subsequently indicted on two counts of attempted murder,[4] three counts of felonious assault,[5] carrying a concealed weapon,[6] having a weapon while under a disability,[7] possession of cocaine,[8] and burglary.[9] Person elected to have the weapon-under-disability count tried to the bench.

{¶ 7} At the close of the state's case, the trial court granted Person's Crim.R. 29 motions as to one count of attempted murder and one count of felonious assault—both relating to Officer Smith. At the conclusion of the jury trial, Person was acquitted on the second attempted-murder charge as well as the drug-possession and burglary charges. He was convicted on the remaining charges and sentenced accordingly.

## Mistrial for Discovery Violations

{¶ 8} In his first assignment of error, Person argues that the trial court should have granted his motion for a mistrial because a statement he had made to police was not provided during discovery. We disagree.

{¶ 9} The statement at issue was made by Person when he was arrested. When he was asked where he had put the gun, he had told the officer to "go fuck [himself]." Person argued that the statement was inconsistent with his defense that the shooting was an accident and that he had cooperated with police throughout the incident. Had he received the statement, he insists, his presentation of the case would have been different.

{¶ 10} The trial court conducted an extensive hearing on the issue, adjourning the proceedings to allow the parties to research the legal issues and to present legal authority supporting their respective positions. The court ultimately determined that the state had failed to disclose the statement. But the court also found that the state had believed that it had provided the statement and that, at worst, the failure to provide the statement was inadvertent. The court further determined that Person would have benefited from having the statement before trial and that he would have been prejudiced if the jury were allowed to consider it.

---

4. R.C. 2903.11(A)(2).

5. Two counts under R.C. 2903.11(A)(2), one count under R.C. 2903.11(A)(1).

6. R.C. 2923.12(A).

7. R.C. 2923.13(A).

8. R.C. 2925.11(A).

9. R.C. 2911.12(A)(2).

{¶ 11} Rather than granting a mistrial, the trial court instructed the jury "to disregard the statement of Officer Stewart about any alleged statement that the defendant made in the basement. And you must treat it as though you never heard it. You may not rely on it in any way in reaching a decision in this case." The court carefully considered the legal authority cited by both sides and concluded that "in the interest of justice, the trial should proceed, that it can be cured by a curative instruction."

{¶ 12} The Ohio Rules of Criminal Procedure give the trial court discretion to fashion a remedy for discovery violations that occur during trial.[10] Since the trial court is in the best position to determine whether a mistrial is needed,[11] the decision to grant or deny a motion for a mistrial rests within the sound discretion of the trial court.[12] We will not reverse the court's decision to deny a motion for a mistrial unless it abused its discretion.[13] A defendant must show that the trial court's decision was arbitrary, unreasonable, or unconscionable.[14] A trial court should not order a mistrial merely because an error or irregularity has occurred, unless it affects the defendant's substantial rights.[15] The court should declare a mistrial "only when the ends of justice so require and when a fair trial is no longer possible."[16]

{¶ 13} In its discretion, the trial court in this case chose to give a curative instruction to the jury. Because the court determined that the interests of justice were best served by allowing the trial to continue, and because the court was in the best position to determine which remedy under Crim.R. 16(E) was most appropriate, we cannot conclude that its decision was arbitrary, unreasonable, or unconscionable. Person's first assignment of error is overruled.

---

10. See Crim.R. 16(E).

11. *State v. Glover* (1988), 35 Ohio St.3d 18, 19, 517 N.E.2d 900.

12. *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 31 OBR 375, 510 N.E.2d 343.

13. *State v. Treesh* (2001), 90 Ohio St.3d 460, 480, 739 N.E.2d 749.

14. *State v. Williams*, 1st Dist. Nos. C–060631 and C–060668, 2007-Ohio-5577, 2007 WL 3036611, ¶ 50.

15. Id. at ¶ 50, citing *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 31 OBR 375, 510 N.E.2d 343, and *State v. Matthews*, 1st Dist. Nos. C–060669 and C–060692, 2007-Ohio-4881, 2007 WL 2745211, ¶ 19.

16. Id., citing *State v. Brewster*, 1st Dist. Nos. C–030024 and C–030025, 2004-Ohio-2993, 2004 WL 1284008, ¶ 67, quoting *State v. Broe*, 1st Dist. No. C–020521, 2003-Ohio-3054, 2003 WL 21360454, ¶ 36.

## Requested Jury Instructions—Assault and Negligent Assault

{¶ 14} In his second assignment of error, Person argues that the trial court improperly refused to give jury instructions on assault and negligent assault. We disagree.

{¶ 15} The determination whether a requested instruction is warranted involves deciding (1) whether the offense in the requested instruction is a lesser included offense of the crime charged [17] and (2) whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater.[18] Since we conclude that the evidence presented at trial would not have reasonably supported both an acquittal on the crime charged and a conviction on the lesser included offense, the trial court properly refused to give the requested instructions.[19]

{¶ 16} Person first argues that the jury could have found him guilty of assault while acquitting him of felonious assault. Person was charged with felonious assault under two different subsections of R.C. 2903.11. First, he was charged with felonious assault for knowingly causing serious physical harm to another.[20] Second, he was charged with felonious assault for knowingly causing or attempting to cause physical harm to another by means of a deadly weapon.[21]

{¶ 17} As Person asserts, assault only requires evidence of some physical harm.[22] Person correctly concludes that "[t]he critical issue is whether the evidence supported a finding only of serious physical harm to Officer Holtmann."

{¶ 18} Serious physical harm includes "[a]ny physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement." [23] Officer Holtmann testified that she would always have the scar that resulted from the shooting in this case. The laceration required plastic surgery to repair. Additionally, Holtmann testified that her glasses were shat-

---

17. *State v. Thomas* (1988), 40 Ohio St.3d 213, 215–216, 533 N.E.2d 286.

18. *State v. Carter*, 89 Ohio St.3d 593, 600, 734 N.E.2d 345.

19. See *State v. Nelson*, 12th Dist. No. CA2006–04–030, 2007-Ohio-2294, 2007 WL 1394645 (rejecting the argument that an instruction should have been given, when even though the instruction involved a lesser included offense, the jury would not have found the defendant guilty on the lesser offense while acquitting on the charged offense).

20. R.C. 2903.11(A)(1).

21. R.C. 2903.11(A)(2).

22. R.C. 2903.13(A).

23. R.C. 2901.01(A)(5)(d).

tered and that glass shards had to be surgically removed from her eye. We hold, given the foregoing undisputed evidence, that the jury could not have concluded that Holtmann had not suffered serious physical harm.[24] Therefore, Person was not entitled to an instruction on assault.

{¶ 19} Likewise, we hold that Person was not entitled to an instruction on negligent assault. There is no evidence in the record to support the conclusion that Person had fired the shot accidentally. In fact, the state presented expert testimony that it would have been extremely unlikely that the handgun in this case would have fired as the result of a malfunction. The witness testified that he was unable to cause the handgun to discharge other than by holding the safety in the grip and pulling the trigger. We can find no support for Person's contention that "[t]he shooting could have been an accident based on the evidence presented at trial." Therefore, Person was not entitled to an instruction on negligent assault.

{¶ 20} Since Person was not entitled to instructions on assault and negligent assault, the trial court did not err when it refused to give them. Person's second assignment of error is overruled.

### Felonious–Assault Convictions Not Allied Offenses

{¶ 21} In his third assignment of error, Person argues that the trial court should have merged the two felonious-assault convictions because they involved allied offenses of similar import. We disagree.

{¶ 22} This court has previously considered and rejected this argument.[25] In *State v. Payne*, we reaffirmed our previous holding in *State v. Coach*, in which we concluded that felonious assault in violation of R.C. 2903.11(A)(1) and felonious assault in violation of R.C. 2903.11(A)(2) are not allied offenses.[26] Based upon our decision in *Payne*, we overrule Person's third assignment of error.

### Allegations of Outside Communication with Juror

{¶ 23} In Person's fourth assignment of error, he argues that his due-process rights were violated because "outside communication biased a juror." We cannot agree.

---

24. See, e.g., *State v. Reckers*, 1st Dist. Nos. C–060451 and C–060640, 2007-Ohio-3679, 2007 WL 2066851 (numerous cuts and abrasions to head and face, injuries necessitating treatment at a hospital, and a lingering scar constitute "serious physical harm").

25. *State v. Payne*, 1st Dist. No. C–060437, 2007-Ohio-3310, 2007 WL 1859302.

26. Id. at ¶ 12, citing *State v. Coach* (May 5, 2000), 1st Dist. No. C–990349, 2000 WL 543801.

{¶ 24} During the trial, a local attorney was contacted by the spouse of one of the jurors. The spouse expressed concern that his wife's name was listed on the clerk of court's website docket as a juror in this case. That attorney contacted defense counsel. The record reveals that one of the juror's children was curious about what case her mother was hearing and used the clerk's website to find it. The husband and daughter, upon learning the details of the case and that the juror's name was associated with it on the Internet, became greatly concerned for her safety.

{¶ 25} The juror was brought in and examined by counsel and the trial court. According to her account, she had told her daughter that she was involved in a "big trial in the city," but had given no other details. The daughter was apparently able to identify the case based on local news coverage and Internet searches. When the daughter approached the juror and told her that she had found the case on the Internet, the juror stopped her from talking any further about the case. The juror did not learn what her daughter had discovered on the Internet because the conversation did not advance beyond that point. And she did not mention anything about this to the other jurors. The attorney contacted by the husband could only testify that the husband had said that "we are afraid," which he took to mean the husband and daughter. He had never spoken to the juror and did not know who she was.

{¶ 26} While there is some evidence in the record that the juror's husband and daughter were concerned about the juror's safety because they had learned that her name was available on the Internet in connection with this case, there is no evidence that this concern was communicated to the juror. A review of the transcript reveals that the juror repeatedly stated that she had stopped her daughter from discussing the case before any such information could have been disclosed.

{¶ 27} Person argues that "the husband and daughter communicated their fears of Appellant to their wife and mother, *without actually verbalizing them*." (Emphasis added.) But there is no basis in the record for this assertion.

{¶ 28} At trial, Person's counsel asserted that the juror's account was not credible. But the trial court disagreed. The court specifically found that "she did not receive any information improperly, that she cut her daughter off when she began disclosing information to her, and * * * that she could judge this case fairly and impartially * * *. I am not going to excuse the juror at this time." The decision to believe the juror's account was within the trial court's discretion. Therefore, we overrule Person's fourth assignment of error.

### Trial Court's Failure to Remove Juror for Cause

{¶ 29} In his fifth assignment of error, Person argues that the trial court should have removed a potential juror for cause because he had already

decided that Person was guilty based on newspaper accounts of the case. A prospective juror who discloses that he cannot be fair and impartial, or that he will not follow the law, may be challenged for cause.[27] The decision not to remove a potential juror for cause is a matter within the sound discretion of the trial court.[28]

{¶ 30} During jury selection, one of the prospective jurors admitted that he had read a newspaper article about the events in this case. He was questioned extensively by counsel and the trial court. While he admitted that he had formed an opinion after reading the article, he also admitted that a newspaper article "gives us the non-detailed version." He stated that he would listen to both sides, make his decision based only upon the evidence presented at trial, and follow the judge's instructions on the law. He also attested that he would be "fair and impartial."

{¶ 31} We conclude that the trial court did not abuse its discretion in refusing to remove the prospective juror for cause. While he conceded that he had formed an opinion about the case, he also said that the opinion was based on an incomplete account, that he would listen to both sides, and that he would apply the applicable law as it was given to him. Person's fifth assignment of error is overruled.

### Batson Challenge

{¶ 32} Person's sixth assignment of error asserts that his right to equal protection was violated because a black juror was removed in violation of *Batson v. Kentucky.*[29] We disagree.

{¶ 33} After the state had used a preemptory challenge to one of two black jurors in the venire, Person's counsel objected. The state explained that when being questioned by the state, the prospective juror had a look of disdain that was not present during questioning by defense counsel. The trial court accepted this explanation.

{¶ 34} Person fails to acknowledge that once a trial court has accepted a racially neutral explanation for a preemptory strike, the defendant must show that the trial court's decision was "clearly erroneous."[30] While trial counsel

---

27. R.C. 2313.42(J).

28. *State v. McGlothin*, 1st Dist. No. C–060145, 2007-Ohio-4707, 2007 WL 2683518, ¶ 10, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301, syllabus, and *State v. Albert*, 10th Dist. No. 06AP–439, 2006-Ohio-6902, 2006 WL 3775879.

29. (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69.

30. *Hernandez v. New York* (1991), 500 U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395; *State v. Stephens* (1998), 126 Ohio App.3d 540, 548, 710 N.E.2d 1160.

argued in this case that the state had asked the juror questions in such a way that it was trying to manufacture a race-neutral explanation for excusing her, that is not reflected in the record. The best Person can do on appeal is to note that the black prospective juror was asked if she had any friends or relatives who had been "charged *or accused* of a criminal offense," while other jurors were simply asked about friends or relatives "charged with a criminal offense." This is a distinction without a difference.

{¶ 35} The trial court presided over jury selection and had the opportunity to observe both how the potential juror was questioned and the manner in which she answered. On this record, the court's decision to credit the state's explanation and to reject Person's argument that the questioning was intended to elicit a hostile response was not clearly erroneous. Person's sixth assignment of error is overruled.

### *Ineffective Assistance*

{¶ 36} In his final assignment of error, Person argues that his trial counsel was ineffective. This argument is singularly groundless.

{¶ 37} The sole basis for Person's argument is the assertion that trial counsel was battling a drug addiction during his representation in this case. There is nothing in the record to support this assertion. While Person has attached an affidavit from trial counsel to his brief, we cannot consider it.[31]

{¶ 38} In his argument, Person fails to cite any action of trial counsel in the record that would support the assertion that he was ineffective. Moreover, a review of the record completely belies the assertion. At trial, counsel was able to convince the court to dismiss two of the most serious counts at the close of the state's case. And Person was subsequently acquitted of three more counts after they were presented to the jury.

{¶ 39} Furthermore, all the other assignments of error in this appeal are cognizable by this court because trial counsel made proper and timely arguments below, preserving the issues for appellate review. In fact, it verges on irony that Person has been able to make this ineffective-assistance argument only because trial counsel completed and submitted an affidavit. Thus, Person's entire brief on appeal has depended upon trial counsel's conscientious representation. The claim now that trial counsel was ineffective is irresponsible and without merit.

{¶ 40} For all the foregoing reasons, the trial court's judgment is affirmed.

Judgment affirmed.

---

31. *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500.

SUNDERMANN, J., concurs.

PAINTER, P.J., concurs in part and dissents in part.

PAINTER, Presiding Judge, concurring in part and dissenting in part.

{¶ 41} As I said when dissenting in *Payne*, "One gun, one shot, one felonious assault." [32] Nothing has changed since then; in fact, nothing has changed since the Double Jeopardy Clauses of the Ohio and the United States Constitutions became effective,[33] except for misguided and bizarre Ohio court decisions that defy logic, law, and common sense.

{¶ 42} I cannot concur in that part of the decision that perpetuates absurdity.

---

**32.** *State v. Payne*, 1st Dist. No. C–060437, 2007-Ohio-3310, 2007 WL 1859302, ¶ 20.

**33.** Section 10, Article I, Ohio Constitution; Fifth Amendment to the United States Constitution.