**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0541n.06

**No. 12-3996**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jun 03, 2013**
DEBORAH S. HUNT, Clerk

DANTE PERSON,

      Petitioner-Appellee,

v.

MICHAEL SHEETS,

      Respondent-Appellant.

                               /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

---

BEFORE:    MERRITT, CLAY, and DONALD, Circuit Judges.

     **CLAY, Circuit Judge.** Petitioner, an inmate in Ohio, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). The district court granted that petition in part on the basis of the Double Jeopardy Clause, U.S. Const. amend. V, because it found that the State of Ohio had sentenced Petitioner twice for crimes that the state court was constitutionally required to merge for the purpose of sentencing. The district court directed the State of Ohio to re-sentence Petitioner. The state appeals, arguing that the district court erred in its interpretation of the Double Jeopardy Clause under governing Ohio law. For the following reasons, we **REVERSE** the district court's decision to grant the writ.

## BACKGROUND

### A.     Facts

The convictions leading to the instant petition stem from an incident that took place in early 2006. As the Ohio Court of Appeals described the incident:[1]

> Cincinnati Police Officers Kristina Holtmann and Laureen Smith were on routine patrol in the early morning hours of January 11, 2006. The officers passed a vehicle with windows that appeared to be too darkly tinted. Additionally, the rear license plate was not illuminated. The officers activated their overhead lights and made a U-turn. The vehicle stopped and backed into a driveway before the police unit reached it. Officer Smith approached the driver's side and Officer Holtmann approached the passenger side. The driver of the car, Bryan Caulton, had an outstanding warrant. Officer Smith arrested Caulton and placed him in the backseat of the police car.
>
> While Officer Smith was dealing with Caulton, Officer Holtmann asked Person, who was in the front passenger seat, for identification. He did not have identification, but gave Officer Holtmann his name and date of birth. Based on previous encounters with Person, Officer Holtmann believed that he had given a false last name and asked him to exit from the vehicle. After he emerged, Officer Holtmann ordered him to place his hands behind his back. Person turned, produced a handgun, and shot Officer Holtmann in the face.
>
> Person immediately fled. As he was running, Officer Holtmann saw him turn and point his gun at her. At this point, she and Officer Smith returned fire. One of the shots struck Person in the leg, but he was able to continue fleeing.
>
> As officers were establishing the crime scene, a witness came forward and told police that Person was in the basement of a nearby residence. A perimeter was established around the house until a S.W.A.T. unit could arrive. Police then began a systematic search of the house, discovering Person in the basement. After Person was taken into

---

[1]Under 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Petitioner has not presented evidence that demonstrates any error in the Ohio court's decision and accordingly, these facts are presumed correct. *See Thompson v. Bell*, 580 F.3d 423, 434 (6th Cir. 2009).

custody, he was asked what he had done with the handgun. He told an officer to "go fuck [himself]."

(R. 10, Report and Recommendation, Mar. 30, 2011, at 2.) (quoting *State v. Person*, 881 N.E.2d 924, 926–27 (Ohio Ct. App. 2007)).

### B.     Procedural History

Petitioner was indicted on January 20, 2006.  The nine-count indictment charged Petitioner with two counts of attempted murder with a firearm specification, Ohio Rev. Code § 2923.02(A), three counts of felonious assault with firearm specifications in violation of Ohio Rev. Code § 2903.11(A)(1)–(2), and one count each of carrying a concealed weapon in violation of Ohio Rev. Code § 2923.12(A), carrying a weapon while under a disability in violation of Ohio Rev. Code § 2923.13(A)(3), possession of cocaine with a firearm specification in violation of Ohio Rev. Code § 2925.11(A), and burglary in violation of Ohio Rev. Code § 2911.12(A)(2).  He was tried by jury in Ohio state court on all charges except the weapons-under-disability charge, which was tried by the bench.  After the state presented its case, the trial court acquitted Petitioner on the burglary charge, as well as on one of the attempted murder charges.  (*Id.*).  After the trial, the jury convicted Petitioner on the two counts of felonious assault with a firearm specification pursuant to Ohio Rev. Code. § 2903.11(A)(1) & (2), as well as the charges of carrying a concealed weapon and having a weapon while under a disability.  Petitioner was sentenced on July 13, 2006.  At sentencing, the court found that the two felonious assault sentences should run consecutively, and sentenced Petitioner to a term of thirty-three years and six months imprisonment, based on two consecutive ten-year terms for the felonious assaults, five years for the weapon while under a disability charge,

eighteen months for the concealed weapon charge, and seven years for the firearm specifications, which were merged at sentencing.

Petitioner appealed to the Ohio Court of Appeals, where he raised the claim that "[t]he trial court erred by imposing consecutive sentences on the felonious assault." (Report and Recommendation at 3.) The court denied Petitioner's appeal, over the dissent of Judge Painter. The court found that under *State v. Payne*, 2007 WL 1859302 (Ohio Ct. App. Dec. 21, 2007), "felonious assault in violation of R.C. 2903.11(A)(1) and felonious assault in violation of R.C. 2903.11(A)(2) are not allied offenses. Based upon our decision in *Payne*, we overrule [Defendant's] third assignment of error." *Person*, 881 N.E.2d 924, 929 (Ohio Ct. App. 2007). Judge Painter dissented, writing that: "[a]s I said when dissenting in *Payne*, 'One gun, one shot, one felonious assault.' Nothing has changed since then; in fact, nothing has changed since the Double Jeopardy Clauses of the Ohio and the United States Constitutions became effective, except for misguided and bizarre Ohio court decisions that defy logic, law, and common sense." *Id.* at 932. (internal citation omitted).

While Petitioner did not timely file his appeal with the Ohio Supreme Court, he was permitted to file an appeal, in which he raised the claim that the sentence was improper because the assault convictions were allied offenses that should have been merged for the purpose of sentencing. The Ohio Supreme Court affirmed the conviction with a summary order, which stated that is was affirming the court of appeals "on the authority of *State v. Brown*, 895 N.E.2d 149 (Ohio 2008)." *State v. Person*, 898 N.E.2d 961, 961 (Ohio 2008). Petitioner's motion for reconsideration was denied without opinion.

Petitioner then filed in federal court, asking the district court to grant him a writ of habeas corpus. He raised three grounds for the writ: that his due process rights under the Fifth and Fourteenth Amendments had been violated because the trial court sentenced him twice for the same offense; that his equal protection rights had been violated because he was sentenced twice for the same offense, and that his right to a fair trial under the Sixth Amendment had been violated because the trial court had permitted the state to proceed despite discovery violations. The district court referred the case to Magistrate Judge Karen Litkovitz for a report and recommendation. The magistrate recommended that the district court deny the petition on all grounds except one. The magistrate recommended granting the petition on the basis of the Double Jeopardy Clause, finding that Petitioner had been sentenced twice for the same offense under Ohio merger law. The district court adopted the report and recommendation in its entirety. The state of Ohio now appeals, asking this Court to overturn the district court's grant of the writ.

## ANALYSIS

### A. Standard of Review

On appeal of a grant of a writ of habeas corpus, "we review the district court's legal conclusions *de novo* and its factual findings for clear error." *Hanna v. Ishee*, 694 F.3d 596, 605 (6th Cir. 2012) (citing *Smith v. Mitchell*, 567 F.3d 246, 255 (6th Cir. 2009)). The district court's findings of fact are clearly erroneous when "we are left with the definite and firm conviction that a mistake has been committed." *United States v. Canipe*, 569 F.3d 597, 600 (6th Cir. 2009) (citing *United States v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007)).

**B.**     **The AEDPA**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a writ of habeas corpus with respect to any claim adjudicated on the merits in state court unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A federal court may not issue the writ "simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).  "[C]learly established federal law, as determined by the Supreme Court of the United States" refers to the holdings, rather than dicta, of the decisions of the Supreme Court. *Howes v. Fields*, --- U.S. ---, 132 S. Ct 1181, 1187 (2012) (quoting *Williams*, 529 U.S. at 362).

A decision is "contrary to" clearly established federal law where "the state court arrives at a conclusion opposite to that reached by this Court on a question of law . . . [or] confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a [the opposite] result." *Williams v. Taylor*, 529 U.S. at 405.  Furthermore, an unreasonable application must be distinguished from an incorrect application. *Harrington v. Richter,* --- U.S. ---, 131 S. Ct. 770, 785 (2011) (quoting *Williams* at 410).  A state court decision which is merely incorrect, rather than unreasonable, is still entitled to deference by a federal court in a habeas proceeding. *Id.*  As a

result, the more general the rule, the greater the leeway accorded to a state court's decision under federal habeas review. *Id.* at 786.

In addition, federal courts have limited authority to review a state court's interpretations of its own state's laws; where the highest court in a state has interpreted that state's statute, a federal court must defer to the state court's interpretation. *Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013). "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989); *accord Volpe*, 708 F.3d at 697. The United States Supreme Court has clarified that for the purposes of habeas, the relevant "temporal cutoff" for whether the law is clearly established is "when direct state appeals have been exhausted and a petition for writ of certiorari from [the United States Supreme Court] has become time barred or has been disposed of."[2] *Greene v. Fisher*, --- U.S. ---, 132 S. Ct. 38, 44 (2011).

## C.    **Double Jeopardy**[3]

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states that "[n]o person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." The clause was incorporated against the states through the enactment of the Fourteenth

---

[2]The Supreme Court of Ohio entered its judgment on December 9, 2008. A "petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment." Sup. Ct. R. 13. Accordingly, the judgment became final for the purposes of habeas review on March 9, 2009.

[3]The district court also addressed the question of whether Petitioner's claim under the Double Jeopardy Clause was fairly presented to the state court, and concluded that it was. The state does not pursue this argument before this Court.

7

Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969). It is clearly established law that a defendant may not be subject to multiple punishments unless the state legislature intended to so punish. *Missouri v. Hunter*, 459 U.S. 359, 367–68 (1983). In contrast to most habeas claims, which are based entirely on federal constitutional rights, a claim under the Double Jeopardy Clause requires analysis of state law; because the state legislature has the authority to define and punish crimes, the definition of multiple punishments is dependent on the legislative intent of the state government. *Volpe*, 708 F.3d at 697. Ohio has enacted a statute regarding multiple punishments. It states, "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." Ohio. Rev. Code § 2941.25(A).

There is a long history of interpretation of this statute by the Ohio Supreme Court. In *State v. Rance*, 710 N.E.2d 699 (Ohio 1999), the Ohio Supreme Court found that a defendant could be sentenced separately for convictions for involuntary manslaughter and aggravated robbery, without offending double-jeopardy principles. *Id.* at 702. In that case, the Ohio Supreme Court stated that "[t]he applicable test for deciding [whether two crimes are of similar import] is as follows: If the elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import." *Id.* at 703 (internal quotation marks and citations omitted). If the crimes are allied offenses, then a court must proceed to the second step, and review "the defendant's *conduct* . . . to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately

or that there was a separate animus for each crime, the defendant may be convicted of both offenses." *State v. Blankenship*, 526 N.E.2d 816, 817 (Ohio 1988) (emphasis in original).

In *State v. Cabrales*, 886 N.E.2d 181 (Ohio 2008), the Ohio Supreme Court revisited the *Rance* test. In that case, the court found that "[c]ourts have struggled applying *Rance's* abstract elements-comparison test." *Id.* at 185. It held that *Rance* had been "misinterpreted," and that "*Rance* [does not] mandate that the elements of compared offenses must exactly align for the offenses to be allied offenses of similar import under R.C. 2941.25(A)." *Id.* at 186. The court went on to find that in the abstract, the elements of the defendant's two convictions for possession of controlled substances and trafficking in controlled substances were allied offenses, and that the defendant was motivated by "a single animus: to sell [the drugs]." *Id.* at 188. Accordingly, it found that he could not be convicted of both offenses.

The Ohio court further clarified its definition of animus for the purposes of double jeopardy in *State v. Brown*, 895 N.E.2d 149 (Ohio 2008), its most recent interpretation of this statute. In that case, the defendant had gotten into an argument with her boyfriend. The argument concluded when the defendant stabbed her boyfriend with a serrated steak knife. *Brown*, 895 N.E.2d at 151. She was then charged with two counts of felonious assault and one count of domestic violence, and the jury was additionally instructed on the included offense of aggravated assault. The defendant was ultimately acquitted on the felonious assault charges, but convicted of two counts of aggravated assault under alternate theories in Ohio Revised Code §§ 2903.12(A)(1) and (A)(2). *Id.* at 151–52. On appeal, the Ohio Supreme Court found that the defendant could not be convicted of both charges of aggravated assault. While it was permissible for prosecutors to present alternate theories of

aggravated assault under Ohio Rev. Code § 2903.12(A)(1) & (A)(2), there had only been one act, and accordingly, the two offenses had to have been committed with the same animus.

### D.    Petitioner's Claim Under the Double Jeopardy Clause

Turning to the instant case, it was not unreasonable for the Ohio court to find that Petitioner's two convictions could have been separate offenses under the Ohio Revised Code. Petitioner was convicted of two counts of felonious assault. Under Ohio statutory law, "[n]o person shall knowingly do either of the following: (1) Cause serious physical harm to another or to another's unborn; (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." Ohio Rev. Code § 2903.11(A)(1)–(2). As the Ohio court found in *Brown*, the subdivisions "set forth two means of committing the same offense—causing serious physical harm to another, or causing or attempting to cause physical harm by means of a deadly weapon . . . ." *Brown*, 895 N.E.2d at 156.[4] Therefore the two means are allied offenses; they represent the same offense, and show the intent of the legislature to protect people from physical harm. *Id.* But that only shields a defendant from punishment on double jeopardy grounds if his conduct shows that he committed the two acts with a single animus.

In this case, Petitioner shot Officer Holtmann in the face. As he ran away, he pointed his gun at Officer Holtmann a second time. Under Ohio law, pointing a gun—if there is evidence of an actor's intention—can constitute felonious assault. *See State v. Seiber*, 564 N.E.2d 408, 420–21

---

[4]In *Brown*, the court interpreted Ohio's aggravated assault statute, Ohio Rev. Code § 2903.12(A)(1)–(2), as opposed to the felonious assault statute at issue in this case, *id.* § 2903.11(A)(1)–(2), but the particular subdivisions pertinent to this point are identical under both statutes.

(Ohio 1990); *State v. Brooks*, 542 N.E.2d 636, 642 (Ohio 1989) ("The act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)"); *State v. Busa*, 1990 WL 40280 at *2 (Ohio Ct. App. Apr. 5, 1990). And intention can be inferred from acts that themselves constitute crimes, without requiring merger of the two offenses. *Seiber*, 564 N.E.2d at 421. Pointing a weapon combined with implicit threats has been held to constitute assault. *See, e.g.*, *State v. Green*, 569 N.E.2d 1038, 1041 (Ohio 1991) (holding that jury could find intent where "defendant held a rifle aimed at Mongold's head. The rifle was loaded, the hammer was cocked . . . Moreover, at the instant defendant positioned his weapon in the direction of the officers, he shouted, 'If you don't have a warrant get the fuck out of my house.'").

Petitioner had already fired his gun, hitting a police officer in the face. He had turned to flee, and while doing so, looked back and pointed his gun at the officer again. Each of these facts are suggestive of his intent to fire again; accordingly, there was sufficient evidence of intent for a court to find that pointing his gun was itself a felonious assault. The court could have found that his first shot was intended to injure the officer, and that his second was part of an intent to flee, or that his first shot was motivated by an attempt to escape, while the second attempt to shoot was based on anger at the officers having fired on him. Therefore it was not an unreasonable application of Ohio law, as established in the *Brown* decision, to find that Petitioner acted with a separate animus to support each of the two counts of felonious assault, because there is no clearly established law that states that the two acts necessarily had a single animus.

The magistrate judge identified a significant problem with the decisions of the Ohio courts: while the court of appeals decided the case on the basis of *Payne*, *State v. Person*, 881 N.E.2d 924, 929 (Ohio Ct. App. 2007), the Supreme Court of Ohio affirmed the case "on the authority of *State v. Brown*." *State v. Person*, 120 Ohio St.3d 323, 323 (2008). But the *Brown* decision overturned the prior holding in *Payne* that the offenses under Ohio Rev. Code 2903.11(A)(1) & (2) are not allied offenses. *See Brown*, 895 N.E.2d at 150–51. It seems inconsistent for the Ohio Supreme Court to uphold the application of Ohio's consecutive sentencing law on the basis of *Brown*, when the *Brown* decision explicitly reversed the *Payne* decision on this point of law. Thus, the magistrate judge concluded that the Ohio Supreme Court's decision was an objectively unreasonable application of federal law because it incorrectly applied its own precedent on state legislative intent. While we agree with the magistrate judge that the decision of the Ohio Supreme Court is worrisome, "[o]ur task is not to determine whether the state court reached the correct outcome, but rather to determine whether the court's application of clearly established federal law is objectively unreasonable—'a substantially higher threshold.'" *Hereford v. Warren*, 536 F.3d 523, 527 (6th Cir. 2008) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939 (2007)).

Accordingly, while we find the reasoning of the Ohio court troubling, it does not give rise to a grant of habeas relief. Under the AEDPA this Court reviews the last reasoned state court decision. The last reasoned state court decision was the Supreme Court of Ohio's decision in *State v. Person*, 898 N.E.2d 961, 961 (Ohio 2008). *See Cullen v. Pinholster*, 563 U.S. ---, 131 S. Ct. 1388, 1402 (2011) ("Section 2254(d) applies even where there has been a summary denial."). That decision affirmed the judgment of the Ohio Court of Appeals, but substituted its own reasoning.

Even when a state court does not provide analysis, this Court must show significant respect to state court decisions:

> Even in the case of a summary denial, when the state court has not fully explained the rationale for its decision, the reviewing "habeas court must determine what arguments or theories *could have* supported the state court's decision; and then it must ask whether it is possible [that] fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior [Supreme Court] decision."

*Gagne v. Booker*, 680 F.3d 493, 514 (6th Cir. 2012) (en banc) (quoting *Pinholster*, 131 S.Ct. at 1402) (emphasis added).

In this case, the apparent contradiction between the intermediate appellate court's decision that the two offenses are not allied and the Ohio Supreme Court's decision based on *Brown* can be reconciled by reference to the second part of the *Brown* analysis: was there a separate animus behind both crimes? While the *Brown* decision reversed *Payne* on the question of whether Ohio Rev. Code § 2903.11(A)(1) & (2) are allied offenses, it did not find that the two crimes must merge in all cases. Because the court in *Payne* found that the two offenses were not allied, it never reached the question of whether one could commit the crimes with a separate animus. And there is no clearly established law suggesting that these two acts are necessarily committed with a single animus. If anything, the dissenting opinion in this case's decision before the Ohio Court of Appeals, which criticized a part of the *Payne* decision that *Brown* did not overrule, seems to suggest quite the opposite: that it is clearly established that one shot and one victim can still lead to more than one conviction under Ohio law. While this Court may find it easier to believe that the two acts were both driven by the same desire to evade arrest (or harm Officer Holtmann), it was not so unreasonable as to give rise to a grant of habeas for the state court to find that the two acts were sufficiently disconnected that the two

crimes did not have to merge for the purposes of sentencing. Accordingly, the state court's decision was not contrary to nor an unreasonable application of clearly established law.

**CONCLUSION**

For the foregoing reasons, we **REVERSE** the district court's grant of a writ of habeas corpus, and **REMAND** for further proceedings consistent with this opinion.