[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 540.]

**AGEE, APPELLANT, *v*. RUSSELL, WARDEN, APPELLEE.**

**[Cite as *Agee v. Russell*, 2001-Ohio-1279.]**

*Juvenile court—Transfer of case for criminal prosecution—Claim of improper bindover—Habeas corpus sought to compel relator's release from prison—Court of appeals' denial of writ affirmed albeit for different reasons than those expressed by court of appeals—State v. Hanning limited to mandatory bindover cases under R.C. 2151.26(B)(4)(b) and does not apply to mandatory bindover cases under R.C. 2151.26(B)(3).*

(No. 00-2211—Submitted May 15, 2001—Decided August 15, 2001.)

APPEAL from the Court of Appeals for Warren County, No. CA2000-07-062.

_____

*Per Curiam.*

{¶ 1} In late March 1997, appellant, Jacob Agee, then sixteen years old, obtained a gun. After trying unsuccessfully to sell the gun, Agee got bullets and test-fired the gun twice.

{¶ 2} At approximately 11:30 p.m. on April 2, 1997, Agee and Bryan Singleton, eighteen years old at the time, were riding in a car driven by a man named Ashley. They stopped and picked up a friend of theirs, Bradley Fannin, who was walking along a road in Miami Township, Montgomery County, Ohio. After Fannin entered the vehicle, Agee showed him the gun, which was loaded. Agee told Fannin that in the three days since he had gotten the gun, he had been thinking about "pulling a 187,"[1] *i.e.*, committing a murder.

{¶ 3} Agee and Singleton told Fannin that they were going to rob a Sunoco gasoline station and convenience store. Agee said that he had been watching the

_____

1. According to Fannin, 187 is a police code for murder or homicide.

store for months and that he knew that a surveillance camera had not been installed. Singleton had worked at the store, and he knew where the safe was located and how it opened.

{¶ 4} In the early morning of April 3, Agee and Singleton entered the Sunoco store and robbed it. During the robbery, a clerk was shot twice in the head and killed. Agee and Singleton did not wear masks during the robbery. Later that same morning, Agee told a friend that he and Singleton had stolen between $200 and $300 from the store safe and that Agee had hidden the gun in a bag that he had placed under some rocks in a creek. Agee stated that he would go back and get the gun "after things had cooled off." According to Agee, Singleton shot the clerk, who had previously fired Singleton.

{¶ 5} Singleton was subsequently convicted of aggravated murder, aggravated robbery, aggravated burglary, and having a weapon while under a disability, and was sentenced to life in prison. See *State v. Singleton* (Mar. 31, 1999), Montgomery App. Nos. 17003 and 17004, unreported, 1999 WL 173357. In his criminal trial, Singleton was viewed as the principal offender, *i.e.*, the actual killer, in the murder of the Sunoco clerk.

{¶ 6} On April 7, 1997, a complaint was filed in the Montgomery County Court of Common Pleas, Juvenile Division, charging Agee with being a delinquent child due to the acts committed on April 3. Agee was charged with committing one count of aggravated murder in violation of R.C. 2903.01(B), one count of aggravated robbery in violation of R.C. 2911.01(A)(1), and firearm specifications for both counts. The state filed a motion to transfer the case to the general division of the common pleas court so that Agee could be tried as an adult. The state claimed that bindover of Agee was required by R.C. 2151.26(B)(3) and (B)(4). Agee moved for a hearing under R.C. 2151.26(C) to determine whether he was amenable to care and rehabilitation through the juvenile system, claiming that the mandatory bindover provisions were inapplicable.

{¶ 7} After conducting hearings on the motions, the juvenile court found probable cause to believe that Agee had committed the offenses alleged in the complaint and transferred him to the criminal division of the common pleas court for trial as an adult. The juvenile court determined that the General Assembly had "passed legislation which makes it mandatory for juveniles who are charged with a certain category one offense to be transferred upon the Court finding probable cause to stand trial as an adult. And that is the situation we have * * * ." The grand jury subsequently returned an indictment charging Agee with aggravated murder, aggravated robbery, and aggravated burglary, with accompanying firearm specifications. In May 1998, after Agee had been convicted of murder, aggravated robbery, aggravated burglary, and the firearm specifications, the common pleas court sentenced him to an aggregate prison term of twenty-three years to life.

{¶ 8} On appeal, the court of appeals affirmed the convictions and sentence. *State v. Agee* (1999), 133 Ohio App.3d 441, 728 N.E.2d 442. In its opinion, the court of appeals determined that the complicity statute, R.C. 2923.03, applied to the mandatory bindover criteria of R.C. 2151.26(B)(3) and (4). *Id.* We denied Agee's discretionary appeal to this court. *State v. Agee* (1999), 86 Ohio St.3d 1489, 716 N.E.2d 721. In arguing in support of jurisdiction, Agee specifically claimed that complicity did not apply to the mandatory bindover provisions of R.C. 2151.26(B)(3) and (4).

{¶ 9} Over eight months following our denial of Agee's discretionary appeal, we held in *State v. Hanning* (2000), 89 Ohio St.3d 86, 728 N.E.2d 1059, at paragraph one of the syllabus, "The mandatory bindover provision of R.C. 2151.26(B)(4)(b) does not apply unless the child, himself or herself, had a firearm on or about the child's person or under the child's control while committing the act charged and the child displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged." We further held at paragraph two of the syllabus, "The complicity

statute, R.C. 2923.03, does not apply to the juvenile bindover criteria set forth in R.C. 2151.26."

{¶ 10} Shortly following our decision in *Hanning*, Agee filed a petition in the Court of Appeals for Warren County for a writ of habeas corpus to compel appellee, his prison warden, to release him from prison. Agee claimed that under *Hanning*, his trial court lacked jurisdiction to try, convict, and sentence him because the juvenile court bindover was invalid. The warden moved for summary judgment, contending that *Hanning* did not apply to Agee's case, that bindover was proper under R.C. 2151.26(B)(3)(a), and that Agee had adequate legal remedies to raise his claims.

{¶ 11} In October 2000, the court of appeals granted the warden's motion and denied the writ. The court of appeals reasoned that *Hanning* could not be applied retroactively to Agee. This cause is now before the court upon Agee's appeal as of right. The Ohio Public Defender filed an *amicus curiae* brief on behalf of Agee.

{¶ 12} Agee asserts that the court of appeals erred in denying the writ. We hold that although the court of appeals may have erred in its rationale, its judgment is correct and is affirmed.

{¶ 13} Agee initially claims that the court of appeals erred in holding that, pursuant to *Teague v. Lane* (1989), 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334, and *Pinch v. Maxwell* (1965), 3 Ohio St.2d 212, 32 O.O.2d 504, 210 N.E.2d 883, the court's decision in *Hanning* cannot be retroactively applied to him. For the reasons that follow, Agee's claim has merit.

{¶ 14} *Teague* is not applicable here. In *Teague*, the United States Supreme Court held, "Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the rules are announced." *Teague*, 489 U.S. at 310, 109 S.Ct. at 1075, 103 L.Ed.2d at 356. For purposes of retroactivity analysis, a

case becomes final when a judgment of conviction is entered, the availability of appeal is exhausted, and the time for a petition for certiorari has elapsed before the declaration of the new ruling. *Id.* at 295, 109 S.Ct. at 1067, 103 L.Ed.2d at 346.

{¶ 15} Unlike *Teague*, this case does not involve the application of a new *constitutional* rule of criminal procedure. Instead, it involves our interpretation of R.C. 2151.26 in *Hanning*. *Teague* is inapplicable to cases in which a court determines the meaning of a statute enacted by the legislature. *Bousley v. United States* (1998), 523 U.S. 614, 620, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828, 838, holding that *Teague* does not apply to cases in which the United States Supreme Court decides the meaning of a criminal statute enacted by Congress.

{¶ 16} *Pinch* is similarly inapposite. In *Pinch*, we applied factors set forth by the United States Supreme Court in *Linkletter v. Walker* (1965), 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, to deny retrospective operation of a new *constitutional* rule to a habeas corpus case. But as noted previously, this case does not involve a new constitutional rule. And *Linkletter* was subsequently overruled. See, *e.g., Teague; Griffith v. Kentucky* (1987), 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649.

{¶ 17} In fact, there is no retroactivity issue here because we did not announce a new rule of law in *Hanning*. Instead, we merely determined what R.C. 2151.26 has meant since its enactment. *Bousley*, 523 U.S. at 620, 118 S.Ct. at 1610, 140 L.Ed.2d at 838; *Fiore v. White* (2001), 531 U.S. 225, 227-229, 121 S.Ct. 712, 714, 148 L.Ed.2d 629, 633 (state supreme court's interpretation of state statute clarified the meaning of the statute and was thus not new law so that case presented no issue of retroactivity); cf., also, *State v. Webb* (1994), 70 Ohio St.3d 325, 331, 638 N.E.2d 1023, 1030, quoting *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 411, 129 N.E.2d 467, 468 ("A decision of this court overruling a former decision 'is retrospective in its operation, and the effect is not that the former [decision] was bad law, but that it never was the   law.' ").

**{¶ 18}** Therefore, the court of appeals erred in holding that under *Teague* and *Pinch*, our decision in *Hanning* could not be applied to Agee's collateral challenge of his conviction and sentence in habeas corpus. This conclusion is consistent with our holding that " '[i]n the absence of a specific provision in a decision declaring its application to be prospective only, * * * the decision shall be applied retrospectively as well.' " *Lakeside Ave. Ltd. Partnership v. Cuyahoga Cty. Bd. of Revision* (1999), 85 Ohio St.3d 125, 127, 707 N.E.2d 472, 475, quoting *State ex rel. Bosch v. Indus. Comm.* (1982), 1 Ohio St.3d 94, 98, 1 OBR 130, 133, 438 N.E.2d 415, 418; *State v. Bolin* (1998), 128 Ohio App.3d 58, 62-63, 713 N.E.2d 1092, 1095. We did not specifically provide in *Hanning* that its application would be prospective only, so it may be applied retrospectively.

**{¶ 19}** Nevertheless, we will not reverse a correct judgment merely because a court of appeals erred in its specified rationale. *State ex rel. Gilmore v. Mitchell* (1999), 86 Ohio St.3d 302, 303, 714 N.E.2d 925, 926. Therefore, we must determine whether denial of the writ was otherwise justified.

**{¶ 20}** "[H]abeas corpus, like other extraordinary writ actions, is not available where there is an adequate remedy at law." *Gaskins v. Shiplevy* (1996), 76 Ohio St.3d 380, 383, 667 N.E.2d 1194, 1197. "In the absence of a patent and unambiguous lack of jurisdiction, a court having general subject-matter jurisdiction can determine its own jurisdiction, and a party challenging that jurisdiction has an adequate remedy at law by appeal." *Brooks v. Gaul* (2000), 89 Ohio St.3d 202, 203, 729 N.E.2d 752, 753. We have applied this principle in habeas corpus cases. See *Howard v. Catholic Social Serv. of Cuyahoga Cty., Inc.* (1994), 70 Ohio St.3d 141, 145, 637 N.E.2d 890, 894.

**{¶ 21}** Agee claims that under *Hanning*, his trial court lacked jurisdiction to try, convict, and sentence him because of an improper mandatory bindover. Although a claim of improper bindover alleges a potentially viable habeas corpus claim, it must be emphasized that this is a limited exception to the general rule that

habeas corpus relief is unavailable when there is an adequate remedy in the ordinary course of law. *State ex rel. Fryerson v. Tate* (1999), 84 Ohio St.3d 481, 485, 705 N.E.2d 353, 356. For the reasons that follow, the common pleas court's general division did not patently and unambiguously lack jurisdiction under *Hanning* to try, convict, and sentence Agee, and he thus had an adequate remedy by appeal to raise his claims.

{¶ 22} Agee claims that under *Hanning*, he is not subject to the mandatory bindover provisions of R.C. 2151.26(B) based on his complicity in the charged offenses. R.C. 2151.26 provides for discretionary and mandatory bindover of certain delinquent juveniles for trial of criminal charges as an adult. Whereas discretionary transfer under R.C. 2151.26(C) "allows judges the discretion to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety[,] * * * [m]andatory transfer [under R.C. 2151.26(B)] removes discretion from judges in the transfer decision in certain situations." *Hanning*, 89 Ohio St.3d at 90, 728 N.E.2d at 1062.

{¶ 23} The juvenile court transferred Agee to the general division of the common pleas court for trial as an adult in response to the state's motion requesting mandatory bindover pursuant to R.C. 2151.26(B)(3)(a) and (4)(b), which provide:

"(B) After a complaint has been filed alleging that a child is a delinquent child for committing an act that would be an offense if committed by an adult, the court at a hearing shall transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense if the child was fourteen years of age or older at the time of the act charged, if there is probable cause to believe that the child committed the act charged, and if one or more of the following applies to the child or the act charged:

" * * *

"(3) The act charged is a category one offense, and either or both of the following apply to the child:

"(a) The child was sixteen years of age or older at the time of the act charged.

" * * *

"(4) The act charged is a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen years of age or older at the time of the commission of the act charged, and either or both of the following apply to the child:

" * * *

"(b) The child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged."

**{¶ 24}** In *Hanning*, Derrick Hanning, a juvenile charged with a delinquency count alleging that he had committed aggravated robbery, was bound over by a juvenile court under R.C. 2151.26(B)(4)(b) even though during the robbery he possessed only a plastic BB gun, which the parties agreed did not constitute a firearm as defined by R.C. 2923.11(B). In its bindover decision, the juvenile court expressly applied the complicity statute, R.C. 2923.03, to find that Hanning had a firearm during the robbery. (See *State v. Hanning* [Feb. 9, 1999], Franklin App. No. 98AP-380, unreported, 1999 WL 64221.) After the common pleas court convicted Hanning of robbery and sentenced him to a seven-year prison term, the court of appeals reversed the conviction and sentence on appeal. *State v. Hanning* (Feb. 9, 1999), Franklin App. No. 98AP-380, unreported, 1999 WL 64221.

**{¶ 25}** The court of appeals determined that the juvenile court erred in binding Hanning over for adult criminal prosecution upon a finding that Hanning's actions in aiding and abetting a codefendant who actually possessed a firearm

during the commission of an aggravated robbery were sufficient to invoke the mandatory bindover provision of R.C. 2151.26(B)(4)(b).  On further appeal to this court, the state claimed that a juvenile who aids and abets another is subject to the mandatory transfer provision of R.C. 2151.26(B)(4)(b) as long as the other person has a firearm on or about his person or under his control and displays, brandishes, indicates possession of, or uses the firearm to facilitate commission of the offense. We rejected the state's claim and affirmed the judgment of the court of appeals. *Hanning*, 89 Ohio St.3d 86, 728 N.E.2d 1059.

{¶ 26} Despite Agee's attempts to portray *Hanning* as controlling in this case, *Hanning* differs in several significant respects.

{¶ 27} First, *Hanning* did not involve a mandatory bindover under R.C. 2151.26(B)(3).  Instead, we emphasized in *Hanning* that the plain language of R.C. 2151.26(B)(4)(b) requires bindover of a child alleged to have personally had a firearm on or about his person or under his or her control while committing the act charged and to have displayed, brandished, indicated possession of, or used the firearm to facilitate the commission of the act charged.  89 Ohio St.3d at 91-92, 728 N.E.2d at 1063-1064.  Although the second paragraph of the *Hanning* syllabus broadly states that "[t]he complicity statute, R.C. 2923.03, does not apply to the juvenile bindover criteria set forth in R.C. 2151.26," we have recognized that " '[t]he syllabus of a Supreme Court opinion states the controlling point or points of law *decided in and necessarily arising from the facts of the specific case before the Court for adjudication*.' (Emphasis added.)"  *State ex rel. Leonard v. White* (1996), 75 Ohio St.3d 516, 518, 664 N.E.2d 527, 529, quoting S.Ct.R.Rep.Op. 1(B).  The juvenile offender in *Hanning* was, unlike Agee, not subject to a mandatory bindover under R.C. 2151.26(B)(3).

{¶ 28} Second, despite the breadth of the second paragraph of the *Hanning* syllabus, which would include discretionary as well as mandatory bindovers, we expressed in our opinion that the syllabus was more limited by specifying that

"[j]uveniles in Hanning's situation are still subject to transfer to adult court under R.C. 2151.26(C)," *i.e.*, discretionary transfer. *Hanning*, 89 Ohio St.3d at 93, 728 N.E.2d at 1065.

**{¶ 29}** Third, if we were to determine that *Hanning* applies to *all* mandatory bindovers, including those under R.C. 2151.26(B)(3), part of the rationale to support the inapplicability of *Hanning* to discretionary bindovers would be rendered inapplicable. In *Hanning*, 89 Ohio St.3d at 93, 728 N.E.2d at 1065, we emphasized:

"*Our holding does not allow Hanning or other juveniles to escape responsibility for their own actions.* We merely find that the legislature did not intend to automatically attribute responsibility to the juvenile for the actions of his or her accomplice. Contrary to the judge's remarks at the probable cause hearing, and contrary to the state's argument, *Hanning and other youths who find themselves in the same situation are not 'saved' by the fact that someone other than themselves personally possessed the firearm. Juveniles in Hanning's situation are still subject to transfer to adult court under R.C. 2151.26(C)*, which provides that a child who commits a felony can be bound over if he is fourteen years of age or older and the results of an investigation and hearing indicate reasonable grounds to believe that the child is not amenable to care or rehabilitation in the juvenile system and the safety of the community requires that the child be placed under legal restraint, including, if necessary, for a period extending beyond the child's majority." (Emphasis added.)

**{¶ 30}** But like the mandatory bindover requirement at issue here—the R.C. 2151.26(B) mandatory bindover requirement that there be "probable cause to believe that the child committed the act charged"—R.C. 2151.26(C)(1)(b) similarly requires "probable cause to believe that the child committed the act charged" before a *discretionary* transfer can occur. Therefore, if complicity is inapplicable to *all* mandatory bindovers so that it cannot be used to support a probable cause finding

to believe that the child committed the *act charged*, it could also not be used to support the identically worded probable cause requirement for discretionary transfers, and juveniles like Agee would not be subject to *any* bindover, *i.e.*, they would be saved from the possibility of prosecution as an adult under either mandatory *or* discretionary bindover.

{¶ 31} Fourth, unlike the juvenile court's bindover decision in *Hanning*, the underlying bindover entry as well as the comments by the juvenile court judge in Agee's case do not establish that the judge relied on the complicity statute to transfer Agee to be tried as an adult. In fact, although the court of appeals did not reach this issue in denying the writ, it expressly observed that "[t]he record submitted to this court does not reflect that the juvenile court found petitioner to be an accomplice to the acts committed."

{¶ 32} Fifth, R.C. 2151.26(B)(3)(a) requires the following for a mandatory bindover: (1) the act charged is a category one offense; (2) the child was sixteen years of age or older at the time of the act charged; and (3) there is probable cause to believe that the child committed the act charged. Here, one of the acts charged was a category one offense, *i.e.*, aggravated murder. R.C. 2151.26(A)(1)(a). In addition, Agee was sixteen years old at the time of the aggravated murder. R.C. 2151.26(B)(3)(a). Finally, there was evidence that Agee obtained a gun, loaded and test-fired it, talked prior to April 3, 1997, about wanting to commit a murder and a robbery, participated in the robbery of the Sunoco store, during which a clerk was shot and killed with the gun, and hid the gun after the murder.

{¶ 33} Therefore, our holding in *Hanning* does not warrant a finding that the juvenile court lacked jurisdiction, much less that it *patently and unambiguously lacked jurisdiction* to transfer Agee under R.C. 2151.26(B)(3)(a) for prosecution as an adult. We hold that *Hanning* is limited to mandatory bindover cases under R.C. 2151.26(B)(4)(b) and does not apply to mandatory bindover cases under R.C. 2151.26(B)(3).

**{¶ 34}** In the absence of a patent and unambiguous lack of jurisdiction, Agee had an adequate remedy at law by appeal to raise his claim concerning the allegedly improper bindover. "Where a plain and adequate remedy at law has been unsuccessfully invoked, extraordinary relief is not available to relitigate the same issue." *Childers v. Wingard* (1998), 83 Ohio St.3d 427, 428, 700 N.E.2d 588, 589. In other words, Agee may not use his extraordinary writ in order to gain successive appellate reviews of the same issue. See *State ex rel. LTV Steel Co. v. Gwin* (1992), 64 Ohio St.3d 245, 249, 594 N.E.2d 616, 620.

**{¶ 35}** Based on the foregoing, we affirm the judgment denying the writ, albeit for different reasons than those expressed by the court of appeals.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————

*Anthony R. Cicero* and *Carl G. Goraleski*, Montgomery County Assistant Public Defenders, for appellant.

*Betty D. Montgomery*, Attorney General, *David M. Gormley*, State Solicitor, and *Stephanie L. Watson*, Assistant Attorney General, for appellee.

————————————