RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0024a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

KELLY L. VOLPE,

       *Petitioner-Appellant,*

    *v.*

GININE TRIM, Warden,

       *Respondent-Appellee*.

No. 11-4365

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:09-cv-790—James L. Graham, District Judge.

Argued: October 12, 2012

Decided and Filed: January 31, 2013

Before: CLAY and WHITE, Circuit Judges; HOOD, District Judge.[*]

───────────────

## COUNSEL

**ARGUED:** Sarah M. Schregardus, Columbus, Ohio, for Appellant. M. Scott Criss, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Sarah M. Schregardus, Columbus, Ohio, for Appellant. M. Scott Criss, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

───────────────

## AMENDED OPINION

───────────────

    HELENE N. WHITE, Circuit Judge. Petitioner Kelly L. Volpe (Volpe), an Ohio state prisoner, appeals the district court's denial of her 28 U.S.C. § 2254 habeas corpus petition. She argues that her state convictions of both operating a vehicle while under the influence, Ohio Rev. Code § 4511.19(A)(1)(a), and aggravated vehicular homicide

───────────────

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

as a proximate result of operating a vehicle while under the influence, *id.* § 2903.06(A)(1)(a), violate the federal Double Jeopardy Clause.  We AFFIRM.

**I.**

**A.**

The facts recounted by the state appellate court are undisputed:

> On the evening of February 24, 2006, two motorists in the northwest area of Columbus called 911 to report a person driving a pick-up truck erratically.  One of the motorists saw that the driver was a woman and that there was also a child in the truck.  Both motorists witnessed the truck jump up onto the curbed median on at least two occasions, frequently go left of center, and stop at stop lights far short of the intersections and then fail to move when the light changed to green without prompting from other motorists.  One of the motorists followed the truck for half an hour, trying to help the police locate it.  Before the police could find it, the truck went off the road, and crashed into a tree.

*State v. Volpe*, No. 06AP-1153, 2008 WL 928342, at *1 (Ohio Ct. App. 10th Dist. Apr. 8, 2008) (unpublished).  Upon arriving at the crash scene, the police found Volpe, intoxicated and trapped behind the truck's steering wheel.  Volpe's daughter, found on the ground on the other side of the truck, died three days later from multiple blunt-force injuries consistent with a car accident.  *Id.*

**B.**

An Ohio grand jury charged Volpe with:  (1) two counts of aggravated vehicular homicide (AVH) (one based on operating a vehicle while under the influence (OVI) and one based on recklessly causing her daughter's death), each with a specification that she had been convicted, or pleaded guilty, of three or more prior OVI or equivalent municipal offenses within the last six years; and (2) OVI with a specification that she had been convicted, or pleaded guilty, of five or more equivalent offenses within the last twenty years.

Volpe proceeded to trial and the jury found her guilty of all three charges and specifications.  For sentencing purposes, the trial court merged the recklessness-based

AVH count with the OVI-based AVH count and sentenced Volpe to a ten-year prison term for one AVH count plus a three-year prison term for the specification. The trial court also sentenced Volpe to a thirty-month prison term for the OVI count plus a five-year prison term for the specification. The trial court ordered the prison terms, for both the offenses and specifications, to run consecutively; thus, Volpe received a total prison term of twenty years and six months.

### C.

On direct appeal, Volpe argued that the trial court erred when it imposed consecutive prison terms for the AVH and OVI convictions—rather than merge them for sentencing purposes—because the offenses were allied offenses of similar import under Ohio's multi-count statute, Ohio Rev. Code § 2941.25, which controls the inquiry whether the state legislature intended cumulative punishments for the two offenses. Volpe argued that this asserted error violated the Double Jeopardy Clause of the Fifth Amendment, which prohibits the imposition of cumulative punishments for the same offense unless the state legislature intended to authorize cumulative punishments.

In April 2008, the state appellate court affirmed Volpe's convictions and rejected her double jeopardy claim:

> [A]ppellant contends in her first assignment of error that the trial court erred when it failed to merge the counts of . . . AVH . . . and OVI for purposes of sentencing. The concept of merger for sentencing purposes arises out of the double jeopardy provisions of both the United States and Ohio Constitutions. These provisions guard against successive prosecutions and cumulative punishments for the same offense.
>
> . . .
>
> . . . [T]o determine whether cumulative punishments may be imposed for crimes that arise from a single criminal act, we must apply the Supreme Court of Ohio's decision in *State v. Rance*, 710 N.E.2d 699 (Ohio 1999). Under *Rance*, our analysis begins with R.C. 2941.25, the General Assembly's "clear indication" of its intent to permit cumulative punishments for the commission of certain offenses. With that statute, the General Assembly permits multiple punishments if the defendant commits offenses of dissimilar import. If, however, the defendant's

actions constitute two or more allied offenses of similar import, the defendant may only be convicted (specifically, found guilty and punished) of only one. However, if offenses of similar import are committed separately or with a separate animus, the defendant may be punished for both.

Thus, to determine whether appellant may be punished for both AVH and OVI, we must decide whether those offenses are allied offenses of similar import. In determining whether crimes are allied offenses of similar import, the Supreme Court of Ohio explained that "[c]ourts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other." The court explained that if the elements do so correspond, the defendant may not be convicted of both "unless the court finds that the defendant committed the crimes separately or with separate animus." If they do not, the offenses are of dissimilar import, and the defendant may be punished for both.

The jury found appellant guilty of two counts of AVH in violation of R.C. 2903.06. The trial court properly merged these two counts for purposes of sentencing and sentenced appellant only for one count. R.C. 2903.06, the AVH statute, provides:

> (A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:
>
> (1)(a) As the proximate result of committing a violation of [R.C. 4511.19(A)] [(the OVI statute)] or of a substantially equivalent municipal ordinance[.]
>
> * * *
>
> (2) * * * (a) Recklessly;
>
> * * *
>
> [(3)] * * *
>
> (a) Negligently[.]

Further, the AVH count also contained allegations of prior OVI convictions (three convictions within six years) that increased the severity of the count from a second-degree felony to a first-degree felony. When the existence of a prior conviction transforms the crime

itself by increasing its degree, the prior conviction is an essential element of the crime. These prior convictions are, therefore, also elements that must be considered in the *Rance* analysis.

Appellant was also found guilty of OVI in violation of R.C. 4511.19(A)(1)(a). That statute provides:

> No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:

> The person is under the influence of alcohol, a drug of abuse, or a combination of them.

Additionally, this count contained allegations of prior OVI convictions (five convictions within 20 years) that increased the severity of the count from a first-degree misdemeanor to a fourth-degree felony. These prior convictions are, therefore, also elements that must be considered in the *Rance* analysis.

We find these counts of AVH and OVI are not allied offenses of similar import. Comparing the statutory elements of each offense in the abstract, they do not correspond to such a degree that the commission of one crime will result in the commission of the other. It is obvious that one could drive under the influence of alcohol, a drug of abuse, or a combination of them in violation of R.C. 4511.19 and not cause the death of another in violation of R.C. 2903.06. Additionally, one could drive recklessly or negligently and cause the death of another in violation of R.C. 2903.06 and not drive under the influence of alcohol, a drug of abuse, or a combination of them in violation of R.C. 4511.19. Finally, an individual who has three OVI convictions within six years, and therefore commits the first-degree felony form of AVH, does not necessarily commit the fourth-degree felony form of OVI, because that offense requires five such convictions within 20 years.

One other appellate court has also determined that AVH and OVI are not allied offenses of similar import. Other courts have found similar offenses, aggravated vehicular assault and vehicular homicide, not to be allied offenses of similar import of OVI.

Because the AVH and OVI offenses are not allied offenses of similar import, the trial court properly sentenced appellant on both counts. Appellant's first assignment of error is overruled.

*Volpe*, 2008 WL 928342, at *13–15 (formatting altered; internal citations altered or omitted).

Volpe then filed a motion for reconsideration, relying on an Ohio Supreme Court decision that was issued one day after the appellate court's decision in her case. The motion was denied:

> In her application for reconsideration, appellant argues we should reconsider our opinion in light of *State v. Cabrales*, 886 N.E.2d 181 (Ohio 2008), which was released one day after we released our opinion in the case at bar. Appellant argues that *Cabrales* requires that we reach a different conclusion on the issue of whether the AVH count and the OVI count at issue here should merge for sentencing purposes. We disagree.
>
> Appellant correctly points out that *Cabrales* attempts to clarify the *Rance* test under R.C. 2941.25(A). *Cabrales* sets forth the following analysis:
>
>> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import. (*State v. Rance . . .*, clarified.)
>
> Applying the *Cabrales* analysis to the case at bar, it is obvious that the commission of the OVI offense at issue here (a fourth degree felony violation of R.C. 4511.19[A]) will not necessarily result in the commission of an AVH offense because the OVI offense does not necessarily result in the death of another. The more difficult question is whether the commission of the AVH offense at issue here (proximately causing the death of another while operating a motor vehicle in violation of R.C. 4511.19[A]), necessarily results in the commission of the fourth degree felony violation of R.C. 4511.19(A). We conclude that it does not.
>
> In order to determine whether offenses are allied offenses of similar import under R.C. 2941.25(A), *Cabrales* requires that we compare the elements of the offenses in the abstract without considering the evidence in the case to determine whether the commission of one offense will necessarily result in the commission of the other. However, as the court clarified in *Cabrales*, an exact alignment of the elements is not required.

Here, pursuant to R.C. 4511.19(A) and 4511.19(G)(1)(d), the elements of fourth degree felony OVI are:

(1) operation of a vehicle;

(2) under the influence of alcohol and/or drugs; and

(3) with five or more prior OVI convictions or guilty pleas within 20 years of the offense.

Pursuant to R.C. 2903.06(B)(2)(c), the elements of the first degree felony AVH offense at issue here are:

(1) causing death;

(2) as a proximate result of an OVI offense;

(3) while operating a vehicle;

(4) while under suspension; or

(5) having three prior OVI convictions or guilty pleas within the previous six years.

Comparing the elements of these offenses in the abstract reveals that the commission of the first degree felony AVH does not necessarily result in the commission of the fourth degree felony OVI offense because this OVI offense requires five or more prior OVI convictions or guilty pleas within the last 20 years. The first degree felony AVH offense requires only three prior OVI convictions within the previous six years. Therefore, these offenses are not allied offenses of similar import under R.C. 2941.25(A), as interpreted by *Rance*, and clarified by *Cabrales*.

*State v. Volpe*, No. 06AP-1153 (Ohio Ct. App. 10th Dist. June 3, 2008) (PID 376–80; R. 9-1) (formatting altered; internal citations altered or omitted). The Ohio Supreme Court denied leave to appeal. *See State v. Volpe*, 893 N.E.2d 518 (Ohio 2008) (table decision).

**D.**

In September 2009, Volpe timely filed this habeas action, raising the double jeopardy claim that she exhausted in state court. A magistrate judge issued a report, recommending denial of Volpe's habeas petition on the basis that the state appellate court's determination that the state legislature intended to authorize cumulative punishments for both AVH and OVI foreclosed habeas relief. *Volpe v. Trim*, No. 09-cv-

790, 2011 WL 5326073 (S.D. Ohio Sept. 26, 2011) (unpublished).  The magistrate judge noted that:

> In 2010, the Supreme Court of Ohio set forth a new test for determining whether two offenses are allied offenses of similar import pursuant to Ohio Rev. Code § 2941.25.  *See State v. Johnson*, 942 N.E.2d 1061 (Ohio 2010).  Because [a federal] [c]ourt must assess the state court's decision at the time it was issued, [I] will not consider this new test.

*Id.* at *9 n.1 (internal citation altered).

After reviewing Volpe's timely objections to the magistrate judge's report, the district court adopted the report insofar as it recommended denial of Volpe's petition and dismissed the action.  *See Volpe v. Trim*, No. 09-cv-790, 2011 WL 5326069 (S.D. Ohio Nov. 7, 2011) (unpublished).  Volpe timely appealed, and the district court granted a certificate of appealability.

## II.

## A.

In a federal habeas appeal, "we review *de novo* the district court's conclusions on issues of law and on mixed questions of law and fact and review its factual findings for clear error."  *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (en banc).  Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court may grant habeas relief only if the state court's adjudication of a prisoner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Only the first provision is at issue here, under which the term "clearly established Federal law . . . refers to the holdings, as opposed to the dicta, of th[e Supreme Court]'s decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (internal quotation marks omitted). A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. An "unreasonable application" occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

**B.**

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see Benton v. Maryland*, 395 U.S. 784, 794 (1969). "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)). Only the last aspect, the protection against multiple punishments, is at issue here.

The Supreme Court has interpreted the multiple-punishments aspect of the Double Jeopardy Clause as protecting defendants from being punished more than once for a single act when the legislature does not intend for the punishments to be cumulative. *See Albernaz v. United States*, 450 U.S. 333, 344 (1981). In other words, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *see White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009) ("The current

jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses."). When two different statutory provisions authorize punishment for the same act, "[t]he first step is to determine whether [the legislature] intended to punish cumulatively the same conduct which violates two statutes." *United States v. Johnson*, 22 F.3d 106, 107–08 (6th Cir. 1994); *see Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("[T]he question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent.").

In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court developed the "same elements" test to determine whether Congress has authorized cumulative punishments: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304. The *Blockburger* test, however, is a "rule of statutory construction," *Albernaz*, 450 U.S. at 340 (quoting *Whalen v. United States*, 445 U.S. 684, 691 (1980)), "not a constitutional test in and of itself," *McCloud v. Deppisch*, 409 F.3d 869, 875 (7th Cir. 2005), *as quoted in Palmer v. Haviland*, 273 F. App'x 480, 486 (6th Cir. 2008) (unpublished); *see Hunter*, 459 U.S. at 368 (explaining that the *Blockburger* test, as modified by subsequent precedent, "is not a constitutional rule requiring courts to negate clearly expressed legislative intent"). As a result, the *Blockburger* test "does not necessarily control the inquiry into the intent of a state legislature. Even if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Johnson*, 467 U.S. at 499 n.8; *accord Hunter*, 459 U.S. at 368–69.

Moreover, "[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) (citing *Hunter*, 459 U.S. at 368; *O'Brien v. Skinner*, 414 U.S. 524, 531 (1974)). "Under the [D]ouble [J]eopardy [C]lause, when evaluating

whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the legislature's intent." *Id.* (citations omitted). "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination."[1] *Id.*; *see Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Jones v. Sussex I State Prison*, 591 F.3d 707, 710 (4th Cir. 2010) ("[W]hen the charged offenses violate state law, the double jeopardy analysis hinges entirely on the state-law question of what quantum of punishment the state legislature intended. Once a state court has answered that state-law question, there is no separate federal constitutional standard requiring that certain actions be defined as single or as multiple crimes." (internal citation and alteration omitted)).

## C.

To determine whether the Ohio General Assembly intended to authorize cumulative punishments, Ohio courts apply the state's multi-count statute, which provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

---

[1]To the extent this court has independently interpreted the scope of a state's statutes in the double jeopardy context, *see, e.g.*, *Pryor v. Rose*, 724 F.2d 525 (6th Cir. 1984) (en banc), it "appears limited to a narrow situation in which the state courts below had failed to give a clear expression on the issue of cumulative punishment," *Banner*, 886 F.2d at 782. In Volpe's direct appeal, the state appellate court clearly determined that the legislature intended to authorize cumulative punishments for AVH and OVI; thus, *Pryor*'s narrow exception is not applicable here.

Ohio Rev. Code § 2941.25. At the time of Volpe's direct appeal, the Ohio Supreme Court interpreted section 2941.25 to require a court to compare the elements of offenses in the abstract to determine whether the offenses were of similar import. *See Rance*, 710 N.E.2d at 705. Specifically, *Rance* instructed the state courts to "assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other." *Id.* (citation and internal quotation marks omitted). The Ohio Supreme Court later clarified, one day after the appellate court's decision in Volpe's case, that "nowhere does *Rance* mandate that the elements of compared offenses must exactly align for the offenses to be allied offenses of similar import[.]" *Cabrales*, 886 N.E.2d at 186.

Two years after Volpe exhausted her appellate remedies and while her habeas petition was pending, the Ohio Supreme Court overruled *Rance*, stating that *Rance's* "in the abstract" test proved difficult in application and raised concern about the "constitutional protection underlying the proper application of" section 2941.25. *Johnson*, 942 N.E.2d at 1066–70. Under the heading "[p]rospective analysis of allied offenses," the Ohio Supreme Court announced a new interpretation of section 2941.25:

> [T]he court must determine prior to sentencing whether the offenses were committed by the same conduct. Thus, the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.
>
> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.
>
> If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., a single act, committed with a single state of mind.
>
> If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.

*Id.* at 1070 (reformatted; internal citations and quotation marks omitted).

## III.

The essential premises of Volpe's appeal are that 1) we should apply *Johnson's* new interpretation of section 2941.25 in this federal habeas proceeding, notwithstanding that the Ohio appellate court, applying the then-controlling *Rance* test,[2] determined that the Ohio General Assembly intended to permit cumulative punishments for both AVH and OVI, and the Ohio Supreme Court did not disturb that ruling on direct appeal; and 2) applying *Johnson*, the two offenses are allied offenses of similar import. Because we disagree with her first proposition, we do not reach her second.

## A.

In support of her proposition that *Johnson* "unbinds" this court from the state-court ruling that the Ohio legislature intended to authorize cumulative punishments for the two offenses, Volpe cites *Walters v. Sheets*, No. 2:09-cv-446, 2011 WL 4543889 (S.D. Ohio Sept. 29, 2011) (unpublished), in which a district court in this circuit conditionally granted habeas relief to an Ohio state prisoner who challenged, on double jeopardy grounds, his convictions of felony murder and felonious assault. In *Walters*, the district court concluded that the Ohio Supreme Court's decision in *Johnson* allowed it to disregard the Ohio intermediate appellate court's *Rance*-based decision issued in the petitioner's direct appeal, that felonious assault is not an allied offense of similar import to felony murder. *Id.* at *3. The district court in *Walters* based its decision to

---

[2]Although *Cabrales* clarified the *Rance* test with a somewhat narrowing interpretation, it nevertheless reaffirmed that test, and subsequent Ohio cases continue to refer to the principles governing the relevant inquiry as "the *Rance* test." *See, e.g.*, *Cabrales*, 886 N.E.2d at 56–61; *State v. Parker*, 917 N.E.2d 338, 436 (Ohio Ct. App. 3d Dist. 2009). We therefore use the term "the *Rance* test" to refer to the test as announced in *Rance* and applied and clarified in its progeny, including *Cabrales*, which controlled until overruled by *Johnson*.

disregard the state-court ruling on its reading of *Banner v. Davis*, 886 F.2d 777 (6th Cir. 1989), and its conclusion that, because *Johnson* interpreted the same statute that had been applied in the petitioner's direct appeal, it necessarily controlled the application of that statute to the petitioner's convictions:

> When the Supreme Court of Ohio overrules its interpretation of a state statute, the correction has retroactive application. *Agee v. Russell*, 751 N.E.2d 1043 (Ohio 2001). In reviewing a previous statutory interpretation the court is not creating new law, but rather deciding what the statute meant from its inception. Additionally, *Johnson* and *Cabrales* make clear that decisions of lower Ohio courts had misinterpreted Ohio's statute governing allied offenses, thereby creating unreasonable results inconsistent with the Double Jeopardy Clause. Therefore, *Johnson's* interpretation of Ohio Revised Code § 2941.25 has retroactive interpretation [sic].

> Habeas courts are required to follow an Ohio court's determination of the legislature's intent only if it is undisturbed by the Supreme Court of Ohio. *Banner*, 886 F.2d at 780. Respondent is correct that in general a habeas court is required to follow an Ohio court's determination of whether the Ohio legislature intended that a single act receive multiple punishments. *Id.* The Sixth Circuit, however, stated that the general rule applies only to an interpretation by a majority of a state's courts "undisturbed" by the state's highest court. *Id.* In this case, the Supreme Court of Ohio disturbed the former prevailing interpretation of Ohio Revised Code § 2941.25 through its holding in *Johnson*.

> Therefore, the interpretation of Ohio Revised Code § 2941.25 in *Johnson* applies retroactively to this case and convicting Petitioner of both felonious assault and felony murder violates Ohio's statute and the Double Jeopardy Clause. In this case, multiple sentences for one offense is a result contrary to clearly established federal law which qualifies Petitioner for a writ of habeas corpus under AEDPA[.]

*Id.* at *4–5 (internal citations altered or omitted).

**B.**

We are not persuaded that *Johnson* controls our consideration of Volpe's double jeopardy claim. First, we do not find *Walters* persuasive. *Banner* does not suggest that a federal habeas court is not bound by a state court's legislative-intent determination (made in a petitioner's direct appeal of the challenged conviction and left undisturbed

by the state's highest court in that appeal) if that ruling is later called into doubt by new precedent issued by the state's highest court after the petitioner has exhausted her state appellate remedies.  Second, *Walters* did not consider whether the Ohio courts have applied *Johnson* retroactively; rather, the district court made its own determination that the decision should be applied retroactively.

**1.**

*Banner* does not permit reexamination of state-law questions in habeas review. In rejecting the petitioner's double jeopardy claim, the *Banner* court reasoned:

> [T]he Tennessee Supreme Court affirmed the Tennessee Court of Criminal Appeals' holding that the legislature intended cumulative punishment for aggravated assault and firing into an occupied dwelling. We are therefore bound by that holding. However much the magistrate and district court may have agreed with Judge Daughtrey's dissent for the Tennessee Court of Criminal Appeals, the district court was obligated to honor the construction of the majority of judges [of the state appellate court] on this question of Tennessee law.  Barring some other constitutional impediment, *the majority view of that [state appellate] court, undisturbed by the Supreme Court of Tennessee, must be accepted as the law of Tennessee and the state law of this case.*

*Banner*, 886 F.2d at 780 (emphasis added).

When read in context, *Banner*—in relying on the fact that the state appellate court's ruling had been "undisturbed" by the state's highest court—was referring to the appellate process in that case.  Here, as in *Banner*, the state appellate court's determination of legislative intent was undisturbed by the state's highest court on direct appeal.  *Banner* did not address the question we now face:  Whether subsequent precedent articulating a new view of the law, issued by the state's highest court after a petitioner has exhausted her appellate remedies, permits us to reexamine whether the state legislature intended to authorize cumulative punishments, and whether, if such reexamination is proper, the application of the new precedent is a question exclusively confided to the state courts.

**2.**

The Constitution does not require that state-court decisions be applied retroactively, *see Wainwright v. Stone*, 414 U.S. 21, 23–24 (1973); *Bowen v. Foltz*, 763 F.2d 191, 193–94 (6th Cir. 1985), and the retroactive application of new state decisional law to a petitioner's conviction after she has exhausted her appellate remedies is a state-law question, on which the state courts have the last word. *See Houston v. Dutton*, 50 F.3d 381, 385 (6th Cir. 1995); *see also Burleson v. Saffle*, 278 F.3d 1136, 1140 (10th Cir. 2002); *Martin v. Warden, Huntingdon State Corr. Inst.*, 653 F.2d 799, 811 (3d Cir. 1981).

Volpe has not applied for post-conviction relief in an Ohio state court seeking the application of *Johnson*. We must therefore determine whether the Ohio courts have applied or would apply *Johnson* retroactively. In *Agee*, a state habeas case on which *Walters* relied, the Ohio Supreme Court held that new state supreme court precedent interpreting a legislative enactment did not present a retroactivity problem because, in issuing its decision, the court did not announce a new rule of law but merely had determined what the statute had meant since its enactment. 751 N.E.2d at 1047. *Agee* opined that its "conclusion [was] consistent with [the court's prior] holding that[,] in the absence of a specific provision in a decision declaring its application to be prospective only, . . . [a decision of the Ohio Supreme Court] shall be applied retrospectively as well." *Id.* (citation, alteration and internal quotation marks omitted; formatting altered).

Subsequent to *Agee*, the Ohio Supreme Court rejected the retroactive application of new state supreme court precedent that involved the construction of its state sentencing statutes, holding: "A new judicial ruling may be applied only to cases that are pending on the announcement date. The new judicial ruling may not be applied retroactively to a conviction that has become final, i.e., where the accused has exhausted all of [her] appellate remedies." *Ali v. State*, 819 N.E.2d 687, 688 (Ohio 2004) (internal citation omitted).

*Agee* appears to be in tension with *Ali*. Nonetheless, assuming *Agee* applies, the question is whether the Ohio Supreme Court in *Johnson* declared its ruling to be

prospective only. In *Johnson*, the Ohio Supreme Court labeled its section concerning its new test as a "[p]rospective analysis of allied offenses under R.C. 2941.25." 942 N.E.2d at 1070. The court's use of the term "prospective," albeit without further comment, suggests that its new test for allied offenses was not intended to be applied retroactively. The court, however, did not engage in a retroactivity discussion. Nor did it explain whether, by using the term "prospective," its new test would apply only to pending criminal matters.

Given that the decisions of the Ohio Supreme Court point to no clear answer, we look to the decisions of the Ohio appellate courts, which have consistently held that *Johnson* does not apply retroactively to cases where the defendant has already exhausted her appellate remedies. *See, e.g.*, *State v. Hughes*, No. 12AP-165, 2012 WL 4503148, at *3 (Ohio Ct. App. 10th Dist. Sept. 28, 2012); *State v. Boyce*, No. 11CA0095, 2012 WL 3542268, at *2 (Ohio Ct. App. 2d Dist. Aug. 17, 2012); *State v. Boone*, 975 N.E.2d 546, 556 (Ohio Ct. App. 10th Dist. 2012); *State v. Pound*, Nos. 24789, 24980, 2012 WL 3061455, at *3 (Ohio Ct. App. 2d Dist. July 27, 2012), *leave denied*, 978 N.E.2d 910 (table decision); *State v. Dukes*, Nos. 2011-P-0098, 2011-P-0099, 2012 WL 2522968, at *2 (Ohio Ct. App. 11th Dist. June 29, 2012), *leave denied*, 977 N.E.2d 694 (2012) (table decision); *State v. Kelly*, No. 97673, 2012 WL 2459149, at *3 (Ohio Ct. App. 8th Dist. June 28, 2012); *State v. Champion*, No. 24782, 2012 WL 2061590, at *1 (Ohio Ct. App. 2d Dist. June 8, 2012), *leave denied*, 976 N.E.2d 914 (2012) (table decision); *State v. Holliday*, No. 11CAA110104, 2012 WL 1964026, at *2 (Ohio Ct. App. 5th Dist. May 29, 2012); *State v. Hickman*, No. 11-CA-54, 2012 WL 1744531, at *2 (Ohio Ct. App. 5th Dist. May 11, 2012), *leave denied*, 975 N.E.2d 1029 (2012) (table decision); *State v. Smith*, No. 9-11-36, 2012 WL 1494285, at *5 (Ohio Ct. App. 3d Dist. Apr. 30, 2012), *leave denied*, 974 N.E.2d 1210 (2012) (table decision); *State v. Layne*, No. 11CA17, 2012 WL 1247209, at *3 (Ohio Ct. App. 4th Dist. Apr. 5, 2012); *State v. Parson*, No. 24641, 2012 WL 601807, at *2 (Ohio Ct. App. 2d Dist. Feb 24, 2012); *cf. Melson v. Prime Ins. Syndicate, Inc.*, 429 F.3d 633, 636 (6th Cir. 2005) ("In order to determine how the state supreme court would rule, we look to the decisions of the state's

intermediate courts unless we are convinced that the state supreme court would decide the issue differently.").

**3.**

Volpe argues that notwithstanding the Ohio courts' determinations to the contrary, the issue cannot be one of retroactivity because *Johnson* cannot have announced new law.  The argument proceeds as follows:  the law at issue is a statute; therefore, all the Ohio Supreme Court did in *Johnson* was make clear what the Ohio General Assembly meant from the start.  When a state's highest court announces a new rule of law, it considers whether to give that new law full retroactive, limited retroactive or solely prospective effect.  But when the court announces a new interpretation of a statute, no retroactivity question arises because the law has not changed, only the court's interpretation.  The statute has always expressed the same legislative intent; the court's earlier pronouncements were simply erroneous.  If *Rance's* interpretation of the multi-count statute, Ohio Rev. Code § 2941.25, was incorrect when the Ohio Supreme Court decided *Johnson*, it was equally incorrect when *Rance* was first decided and at all times in between.  The Ohio General Assembly *never* intended the double punishment that the *Rance* test permitted.  And, because the sole inquiry in this habeas proceeding is whether the Ohio legislature intended double punishment under the facts of this case, the Double Jeopardy Clause requires that we consider Volpe's claim under *Johnson*, separate and apart from any retroactivity decisions of the Ohio courts, otherwise we cannot know if the legislature intended double punishment.

The problem with this seemingly compelling argument is that legislatures often express their intent in broad concepts, leaving the development and application of those concepts to the state's highest court.  Here, the Ohio legislature did not provide a statutory definition of the controlling term  "allied offenses of similar import."  Ohio Rev. Code § 2941.25(A); *see State v. Jodrey*, No. C-840406, 1985 WL 6740, at *4 (Ohio Ct. App. 1st Dist. Apr. 10, 1985) ("We have previously discoursed about the challenging nature of determining what are allied offenses of similar import—the basic concept with which R.C. 2941.25 is concerned." (citation omitted)); *cf. Johnson*, 942 N.E.2d at 1066

("In *Rance*, we held that the General Assembly provided R.C. 2941.25 as a guide for courts to determine whether particular offenses were intended to be allied." (citation omitted)). The legislature left it to the Ohio Supreme Court, the entity ultimately charged with applying the statute, to give life to the concept. In such circumstances, the judicial development of the legislatively-created concept is little different from the development of judicially-announced law. The law evolves over time with experience. In *Johnson*, the Ohio Supreme Court determined after years of experience applying *Rance* that the statutory scale used to weigh impermissible double punishment against full criminal accountability—"allied offenses of similar import"—was no longer in balance and required readjustment. *See* 942 N.E.2d at 1069 ("[T]his court has gone to great efforts to salvage the *Rance* standard. We have modified it and created exceptions to it in order to avoid its attendant absurd results. However, our allied-offenses jurisprudence has suffered as a consequence.").

This allowance for judicial development of statutory law without running afoul of the Constitution is implicit in *Fiore v. White*, 531 U.S. 225 (2001) (per curiam), and *Bunkley v. Florida*, 538 U.S. 835 (2003) (per curiam), which involved the question when new judicial interpretations of statutory law became controlling. In the context of a state prisoner's habeas legal-sufficiency challenge to his conviction, the U.S. Supreme Court held "that retroactivity [was] not at issue" in applying new state supreme court precedent interpreting a criminal statute because the state court's ruling, although issued after the petitioner's conviction became final, furnished "[the] correct statement of the law when [the petitioner's] conviction became final." *Fiore*, 531 U.S. at 226. In *Fiore*, the habeas petitioner's conviction had become final before the Pennsylvania Supreme Court interpreted the criminal statute at issue for the first time in the petitioner's co-defendant's appeal. Although the petitioner's conduct would not have come within the purview of the statute as interpreted in the co-defendant's intervening appeal, the Pennsylvania court nevertheless denied the petitioner collateral relief. The U.S. Supreme Court did not adopt the simple logic that the statute must have had the same meaning all along. Rather, the Court certified to the Pennsylvania Supreme Court the question whether the decision was a new interpretation of the statute or a correct

statement of the law when the petitioner's conviction became final.  *See id.*  The Pennsylvania court responded that it did not announce a new rule of law, but "merely clarified the plain language of the statute" applicable to the petitioner's conviction.  *Id.* at 228 (citation omitted).

Underlying the Pennsylvania Supreme Court's answer to the certified question in *Fiore* was the fact that it did not overrule or change any controlling precedent interpreting the statute.  *See Fiore v. White*, 757 A.2d 842, 848 (Pa. 2000) ("[W]hen we have not yet answered a specific question about the meaning of a statute, our initial interpretation does not announce a new rule of law.  Our first pronouncement on the substance of a statutory provision is purely a clarification of an existing law. . . . Consequently, [when interpreting the statute for the first time,] we were not in a position to overrule a decision by this Court.").  In light of the state court's certification, the U.S. Supreme Court held, based on the uncontested facts of the petitioner's case, that his conduct did not violate the criminal statute under which he had been convicted and thus his conviction violated due process.  *Fiore*, 531 U.S. at 228–29.

Further, the Supreme Court held in *Bunkley* that, when state law has changed or evolved by judicial decision, the "[t]he proper question under *Fiore* is not just *whether* the law changed.  Rather, it is *when* the law changed."  538 U.S. at 841–42.  In *Bunkley*, the Court clarified the *Fiore* inquiry in the context of a petitioner's direct appeal from his state-court collateral proceeding, in which the petitioner raised a sufficiency challenge based on the Florida Supreme Court's changed interpretation of the criminal statute under which he had been convicted.  If applicable before his conviction became final, the new interpretation would arguably have rendered his conviction in violation of due process.  The Court remanded the case for the state supreme court to clarify whether its changed interpretation applied at the time the petitioner's conviction became final.  *Id.* at 842.

Assuming that *Fiore* extends to sentencing statutes in the double jeopardy context, its rationale does not apply here because *Johnson* did not merely clarify section 2941.25, but expressly overruled *Rance* and changed more than a decade of Ohio

allied-offenses jurisprudence. *See* 942 N.E.2d at 1066–70; *see also State v. Williams*, --
N.E.2d --, --, No. 2011-0619, 2012 WL 6198021, at *5 (Ohio Dec. 6, 2012) ("[I]n
*Johnson*, this court abandoned the abstract analysis entirely [and] overruled *Rance*[.]").
The Ohio Supreme Court issued *Johnson* two years after Volpe's conviction became
final. Because the *Rance* test was the controlling standard at the time Volpe's conviction
became final, the Ohio courts consider *Johnson's* new test for allied offenses
inapplicable to her case. *See, e.g.*, *Layne*, 2012 WL 1247209, at *5 ("Although *State v.
Johnson* . . . specifically overruled *State v. Rance*, we must nevertheless apply *Rance* and
its progeny . . . because it was the applicable law at the time Appellant's convictions and
sentences became final.").[3]

## IV.

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[3]Of course, we do not preclude the application of *Johnson* in habeas review if the Ohio Supreme
Court declares that its new test for allied offenses applies in the post-conviction context. But as the Ohio
courts have treated *Johnson* as a change in the law, we reject Volpe's suggestion that a post-conviction
application of the decision does not involve a retroactivity question.